## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  LADENE RAMSEY BEER, Trustee,<br>RAYMOND H. RAMSEY AND NINETTA<br>J. RAMSEY REVOCABLE TRUST, and<br>(2)  KATHERINE K. BOECK,<br>on behalf of themselves and others<br>similarly situated | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | |
| vs. | )<br>) | Case No. CIV-07-798-L |
| (1)  XTO ENERGY INC. f/k/a<br>CROSS TIMBERS OIL COMPANY<br>a Delaware corporation | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## DEFENDANT XTO ENERGY INC.'S RESPONSE
## IN OPPOSITION TO PLAINTIFFS' COMBINED
## MOTION FOR CLASS CERTIFICATION
## <u>AND BRIEF IN SUPPORT</u>

James M. Peters, OBA No. 7078
Michael S. Peters, OBA No. 15328
MONNET, HAYES, BULLIS,
  THOMPSON & EDWARDS
120 N. Robinson, Suite 1719
Oklahoma City, OK  73102
Telephone:  (405) 232-5481
Facsimile:  (405) 235-9159

and

Christopher J. Perry, OBA No. 14375
LAW OFFICES OF GIOVANNI I. PERRY, PLLC
5350 South Western Avenue, Suite 605
Oklahoma City, OK  73109
Telephone:  (405) 601-2222
Facsimile: (405) 604-2704

ATTORNEYS FOR DEFENDANT
XTO ENERGY INC.

# TABLE OF CONTENTS

Page

INTRODUCTION & BACKGROUND.............................................................................. 1

SECTION I:  IMPROPER EXPANSION OF THE CLASS AND CLAIMS.................... 3

I.  Plaintiffs' Efforts to Redefine the Proposed Class
    are Untimely ............................................................................................. 3

    A.  Plaintiffs Defined the Class in their Petitions ...................................................... 3

    B.  Plaintiffs Have Proposed A New Class Definition in their Motion .................. 5

    C.  Plaintiffs' Newly-Proposed Class is Improper and Prejudicial ......................... 5

        1.  Plaintiffs' class definition has
        been established ...................................................................... 5

        2.  Plaintiffs' new class definition
        fails to give XTO fair notice .................................................... 6

        3.  Plaintiffs have waived any class
        other than those proposed here................................................ 6

II.  Plaintiffs' Efforts to Hold Class Certification Open Indefinitely ................................. 8

    A.  Plaintiffs had Ample Opportunity to Evaluate and Propose a Class ................. 8

    B.  Plaintiffs have but one Chance to Certify their Class(es),
        and that Time has Come ............................................................... 8

III.  Plaintiffs' New "Breach of Contract" Claim was Never Pled..................................... 9

IV.  Plaintiffs' Request for Injunctive Relief is Improper.................................................... 9

SECTION II:  CLASS CERTIFICATION BRIEFING ...................................................... 10

    STATUTORY REQUIREMENTS FOR CLASS ACTIONS................................ 10

PROPOSITION I:
PLAINTIFFS' ATTEMPT TO CERTIFY A KANSAS SUBCLASS TO WHICH
THEY DO NOT BELONG AND WHICH THEY CANNOT REPRESENT
IS MISGUIDED .................................................................................................. 12

PROPOSITION II:
PLAINTIFFS HAVE NOT SATISFIED RULE 23 (a)'s NUMEROSITY
REQUIREMENT................................................................................................... 15

PROPOSITION III:
PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'s COMMONALITY
REQUIREMENT................................................................................................... 16

    A.  Legal Standards for Commonality.................................................................. 16

    B.  The gas sales contracts under which Plaintiffs' gas is sold
        are not common .............................................................................. 17

        1.  Contracts are uncommon on a statewide basis...................................... 17

        2.  Contracts are uncommon amongst wells on the
            Timberland system .......................................................................... 18

    C.  Plaintiffs' Lease Terms are not Common ......................................................... 19

        1.  Plaintiffs' lease terms are different than other leases
            associated with plaintiffs' own wells .............................................. 20

        2.  Plaintiffs' lease terms are also varied in comparison
            to others in Oklahoma .................................................................... 22

    D.  The Composition of Plaintiffs' Gas is not Common ........................................ 23

        1.  Plaintiffs' gas has lower entrained liquids than other
            Timberland wells............................................................................ 23

        2.  Plaintiffs gas has less entrained liquids than gas in
            other areas of Oklahoma ................................................................ 24

    E.  Liquid Sales and Gas Consumption Claims are not Common ......................... 24

        Plaintiffs are compensated for 100% of volume – and
        liquids – produced from their wells.  ............................................... 25

PROPOSITION IV:
PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'S TYPICALITY
REQUIREMENT ........................................................................................... 26

PROPOSITION V:
PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'S ADEQUACY OF
REPRESENTATION REQUIREMENT ......................................................... 28

PROPOSITION VI:
PLAINTIFFS HAVE FAILED TO MEET ANY OF THE RULE 23 (B)
REQUIREMENTS ......................................................................................... 29

CONCLUSION ............................................................................................. 32

## TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ................................................................ 32

*Baby Neal For And By Kanter v. Casey,*
    43 F.3d 48 (3rd Cir. 1994) ................................................................. 26

*Barney v. Holzer Clinic*,
    110 F.3d 1207 (6th Cir.1997) .............................................................. 13

*Booth et al. v. Cross Timbers Oil Company*,
    Case No. CJ-98-16, District Court of Dewey County, State of Oklahoma............ 31

*Blum v. Yaretzky*,
    497 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ................................... 13, 14

*Cherokee Nation of Oklahoma v. U.S.*,
    199 F.R.D. 357 (E.D. Okla. 2001) ....................................................... 16

*East Texas Motor Freight System, Inc. v. Rodriguez*,
    431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ............................. 13, 14, 28

*Everitt v. City of Marshall*,
    703 F.2d 207 (5th Cir.), cert. denied, 464 U.S. 894 (1983) ................................. 28

*First Life Assur. Co. v. Mountain*,
    1993 OK CIV APP 20, 848 P.2d 1177................................................... 15

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ................................. 13, 14

*Greghol Ltd. Partnership v. Oryx Energy Co.*,
    1998 OK CIV APP 111, 959 P.2d 596.................................................. 19

*Harriston v. Chicago Tribune Co.*,
    992 F.2d 697 (7th Cir. 1993) .............................................................. 28

*Hines v. Widnall*,
    334 F.3d 1253 (11th Cir. 2003) .......................................................... 13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................ 11

*In re Scientific Control Corp. Securities, Ltd.*,
    71 F.R.D. 491 (S.D.N.Y. 1976) ........................................................................ 7

*Jefferson v. Ingersoll Int'l Inc.*,
    195 F.3d 894 (7th Cir. 1999) ........................................................................ 32

*Mittelstaedt v. Santa Fe Minerals, Inc.*,
    1998 OK 7, 954 P.2d 1203 ........................................................................ 23, 27

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ........................................................................ 32

*Monarch Asphalt Sales Co., Inc., v. Wilshire Oil Co. of Texas*,
    511 F.2d 1073 (10th Cir. 1975) ........................................................................ 28

*Moncrief v. Williston Basin Interstate Pipeline*,
    174 F.3d 1151 (10th Cir. 1999) ........................................................................ 7

*Rector v. City and County of Denver*,
    348 F.3d 935 (10th Cir. 2003) ........................................................................ 13

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ........................................................................ 28

*Scoufos v. State Farm Fire & Casualty Co.*,
    2001 OK 113, 41 P.3d 366 ........................................................................ 28

*Shores v. First City Bank Corp.*,
    1984 OK 67, 689 P.2d 299 ........................................................................ 15

*Trevino v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) ........................................................................ 16

*Trevino v. Holly Sugar Corp.*,
    811 F.2d 896 (5th Cir. 1987) ........................................................................ 28

*Waters v. Weyerhaeuser Mortgage Co.*,
    582 F.2d 503 (9th Cir. 1978) ........................................................................ 7

## STATUTES AND RULES

28 U.S.C. § 1332 (d) (2) ................................................................ 4

28 U.S.C. § 1441 ......................................................................... 4

28 U.S.C. § 1446 ......................................................................... 4

28 U.S.C. § 1453 ......................................................................... 4

Fed. R. Civ. P. 8 .......................................................................... 6

Fed. R. Civ. P. 15 ........................................................................ 6

Fed. R. Civ. P. 23 ........................................................................ 5

Fed. R. Civ. P. 23 (a) ............................................... 6, 10, 11, 15, 16, 26, 28, 33

Fed. R. Civ. P. 23 (a) (2) ................................................................ 16

Fed. R. Civ. P. 23 (a) (3) ................................................................ 12

Fed. R. Civ. P. 23 (b) ............................................... 11, 12, 19, 29, 32, 33

Fed. R. Civ. P. 23 (b) (1) ................................................................ 30

Fed. R. Civ. P. 23 (b) (1) (A) ............................................................ 30

Fed. R. Civ. P. 23 (b) (1) (B) ............................................................ 30

Fed. R. Civ. P. 23 (b) (2) ............................................................ 30, 31

Fed. R. Civ. P. 23 (b) (3) ............................................................ 16, 32

Fed. R. Civ. P. 23 (c) (4) (B) ............................................................ 11

Advisory Committee Notes to Fed. R. Civ. P. 23 .................................. 30, 31

## SECONDARY AUTHORITY

MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.222 ................................. 6

MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.23 .................................. 16

<u>EXHIBITS</u>

1 – Plaintiffs' Answer to Interrogatory No. 13

2 – List of Wells on Timberland System

3 – Gas Purchase Contract, dated March 29, 1996 and Ratification and Amendment
     to Gas Purchase Contract, dated January 28, 2006

4 – Deposition of Jennifer Spaulding, dated June 16, 2006

5 – Deposition of Terry Schultz, dated January 10, 2008

6 – Deposition of Bennie George Kniffen, dated February 8, 2008

7 – Affidavit of Kris Terry

8 – Stipulated Order

9 – C.A. Moore Lease, dated December 31, 1942

10 – Leona Woods Lease, dated June 17, 1943

11 – Clutter Lease, dated February 16, 1937

12 – Highfill Lease dated March 25, 1969, and amended October 20, 1975

13 – Halper Lease, dated September 1, 1959

## DEFENDANT XTO ENERGY INC.'S RESPONSE
## IN OPPOSITION TO PLAINTIFFS' COMBINED
## MOTION FOR CLASS CERTIFICATION
## <u>AND BRIEF IN SUPPORT</u>

Defendant, XTO Energy Inc. ("XTO"), opposes the Motion for Class Certification (the "Motion") filed by Plaintiffs, Ladene Ramsey Beer, as Trustee of the Raymond H. Ramsey and Ninetta J. Ramsey Revocable Trust, and Katherine K. Boeck (collectively, "Plaintiffs"). Plaintiffs seek an accounting of royalties paid to them by XTO, alleging they were improper. Plaintiffs seek to certify a class (and multiple subclasses) on this basis. Plaintiffs' action is premised upon substantial factual misrepresentations and meritless claims; further, Plaintiffs have failed to establish the requisite basis for class certification. For the reasons set forth below, Plaintiffs' Motion should be denied.

## <u>INTRODUCTION & BACKGROUND</u>

XTO is an oil and gas exploration and production company. Plaintiffs are royalty owners in two of XTO's wells. Plaintiff Beer, as trustee, owns a royalty interest in the Fern Parkes #1 well, and Plaintiff Boeck owns a royalty interest in the Leona Woods #1-17 well. See Plaintiffs' Response to Interrogatory No. 13, attached hereto as Ex. 1; Affidavit of Jennifer Spaulding, Attachment 3 to XTO's Motion for Summary Judgment (Ex. 40 to Notice of Removal (Document No. 1)). Both wells are located in Texas County. See list of wells on Timberland System, attached hereto as Ex. 2.

The gas produced from Plaintiffs' wells is sold to and gathered by Timberland Gathering & Processing Company, Inc. ("Timberland"). See Gas Purchase Contract, dated March 29, 1996 and Ratification and Amendment to Gas Purchase Contract, dated January 28, 2006, collectively attached hereto as Ex. 3. Timberland is a wholly-owned gathering company

1

subsidiary of XTO, which gathers gas in Texas County and Beaver County, Oklahoma, as well as in southern Kansas.  See Deposition of Jennifer Spaulding, page 31, lines 15-18, attached hereto as Ex. 4; See Deposition of Bennie Kniffen, page 16, line 18 – page 17, line 2, attached hereto as Ex. 6.  Timberland buys gas at the wellhead from both XTO-operated wells and third party-operated wells.  See Deposition of Terry Schultz, page 83, lines 2-7, attached hereto as Ex. 5; See Spaulding Deposition, Ex. 4, page 32, lines 1-2.  Timberland transports, treats and sells the gas. See Schultz Deposition, Ex. 5, page 83, lines 2-15.

Plaintiffs sued XTO in 2004 seeking an accounting for payment of gas royalties by XTO. Now, after nearly four years of litigation, Plaintiffs have moved to certify their class. Specifically, Plaintiffs have asked the Court to certify "the Timberland Class," as defined by Plaintiffs in their brief.  This proposed class includes all XTO-operated wells connected to the Timberland gathering system, located in both Oklahoma and Kansas.

Plaintiffs' Motion (and all previous motions) assert numerous purported "facts" as the bases for their claims.   These "facts" are denied and should be disregarded for class-certification purposes.  Although XTO is forced to address some of these "facts" in analyzing the absence of commonality and typicality of Plaintiffs' claims, XTO respectfully refers the Court to prior pleadings, specifically XTO's Response in Opposition to Plaintiffs' Motion to Compel and Brief in Support (Document No. 22), and the Affidavit of Kris Terry (attached hereto as Ex. 7), XTO's expert witness, for a more thorough briefing on Plaintiffs' meritless "factual" allegations.

In sum, Plaintiffs' proposed class and subclasses fail for a multitude of reasons. Principally, Plaintiffs' proposed class lacks commonality.  XTO sells gas in Oklahoma under

many different sales contracts.  The sales contracts under which Plaintiffs' gas is sold is distinct

from every other contract in Oklahoma.  Further, the lease royalty provision associated with

Plaintiffs' royalty interest is unique from other royalty provisions associated with Plaintiffs'

very own wells, rendering Plaintiffs uncommon.  The type of gas produced from Plaintiffs'

wells is also uncommon:  it is a low Btu gas that is subject to a different analysis that other,

higher Btu gas on the Timberland system.  Finally, Plaintiffs' interests are not aligned with

other putative class members, and do not represent adequate class representatives.  For these

reasons, and others detailed below, Plaintiffs' Motion must be denied.

### SECTION I:  IMPROPER EXPANSION OF THE CLASS AND CLAIMS

Although Plaintiffs ask the Court to certify the "Timberland Class," Plaintiffs have asked

the Court to do much more.  Indeed, Plaintiffs' Motion attempts to redefine the class, assert new

claims, and indefinitely hold open the certification of future undefined subclasses.  However,

Plaintiffs' efforts are extremely prejudicial and contrary to law.  Accordingly, Before XTO can

specifically address class certification arguments, summarized above, it must first challenge

these ill-conceived attempts  at eleventh hour gamesmanship.

### I.    Plaintiffs' Efforts to Redefine the Proposed Class are Untimely

#### A.    *Plaintiffs Defined the Class in their Petitions.*

Plaintiffs filed this case nearly four years ago on October 4, 2004, in the District Court of

Texas County, Oklahoma, Case No. CJ-04-59 (severed from Case No. CJ-2002-11). The First

Petition in Severed Action is Exhibit No. 5 to the Notice of Removal (Document No. 1).  The

Petition alleged a claim for an accounting against XTO (see Paragraph Nos. 13, 14 and 44) and

sought to certify the matter as a class action for the following defined class:  "All non-

governmental entities with the legal right to receive a royalty calculated by or on behalf of the Defendant regarding production from a well in Colorado, Kansas, New Mexico, Oklahoma or Texas." (see Paragraph No. 57).

Plaintiffs then filed a First Amended Petition on January 25, 2006. The First Amended Petition is Exhibit No. 15 to the Notice of Removal (Document No. 1). Again, Plaintiffs sought an accounting from XTO (see Paragraph Nos. 11, 12 and 13) and sought to certify the matter as a class action for the following defined class: "All non-governmental entities with the legal right to receive a royalty calculated by or on behalf of the Defendant regarding production from an Oklahoma well." (see Paragraph No. 20). As a result of the amendment, Plaintiffs focused their claims solely on Oklahoma wells and dropped their claims involving Colorado, Kansas, New Mexico or Texas wells.

On April 3, 2007, Plaintiffs again amended their claims through the filing of their Second Amended Petition (Document No. 22-2). As before, Plaintiffs' Second Amended Petition sought an accounting from XTO (see Paragraph Nos. 13, 14 and 15). Further, Plaintiffs sought to certify the matter as a class action for same defined class as set forth in their First Amended Petition in 2006: "All non-governmental entities with the legal right to receive a royalty calculated by or on behalf of the Defendant regarding production from an Oklahoma well." (see Paragraph No. 22). Importantly, Plaintiffs' Second Amended Petition currently serves as Plaintiffs' live, operative pleading pending before this Court.

XTO removed this case pursuant to 28 U.S.C. §§ 1332(d) (2), 1441, 1446 and 1453 on July 19, 2007. After removal, Plaintiffs further cemented the precise nature of their claims, reiterating in pleadings (and the Status Reports before this Court) that the class Plaintiffs seek to

4

certify is the class defined in their live Petition:  "All non-governmental entities with the legal right to receive a royalty calculated by or on behalf of the Defendant regarding production from an Oklahoma well."  See Amended Joint Status Report and Discovery Plan (Document No. 10), page 3 at Paragraph No. 3(6).  Deviation from their Petition for purposes of this motion should be denied.

> B.      *Plaintiffs Have Proposed A New Class Definition in their Motion.*

Plaintiffs now move to certify this matter as a class action pursuant to Fed. R. Civ. P. 23. In doing so, Plaintiffs have once again changed their proposed class definition from that previously pled.  Indeed, Plaintiffs now seek to certify a class, labeled the "Timberland Class", which is comprised of "All non-governmental royalty owners who, during Relevant Times, received payments based on production from an XTO-operated well for which the production is processed in Timberland [Gathering and Processing Company]'s Tyrone[, Oklahoma] natural gas processing plant."[1]  Further, for the first time in the nearly four-year history of this accounting action, Plaintiffs now propose two subclasses:  an "Oklahoma subclass" ("Members of the Timberland Class who receive royalties from at least one well in Oklahoma.") and a "Kansas subclass" ("Members of the Timberland Class who receive royalties from at least one well in Kansas.")  Importantly, Plaintiffs have never pled either the new class definition, or the proposed subclasses, in their Petition.

> C.      *Plaintiffs' Newly-Proposed Class is Improper and Prejudicial.*

> > 1.      *Plaintiffs' class definition has been established.*

As stated above, Plaintiffs defined the class in their Second Amended Petition.  The

---

[1]"Relevant Times" is a term that is explained in footnotes 7, 8 and 9 of Plaintiffs' Motion.

instant Motion provides no basis for Plaintiffs to redefine that class.

Defining the class is of critical importance because it identifies the persons (1) entitled to receive notice, (2) entitled to relief, and (3) bound by a final judgment.  MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.222.  The definition must be precise, objective and presently ascertainable.  *Id*.

Given the importance placed on class definition, and the amount of discovery devoted to it , Plaintiffs cannot prejudice XTO and inconvenience the Court by redefining its class in the confines of the instant Motion.

### 2.      *Plaintiffs' new class definition fails to give XTO fair notice.*

Plaintiffs' Second Amended Petition must serve to give "fair notice" of the claims asserted against XTO under Fed. R. Civ. P. 8.  If Plaintiffs are allowed to redefine the class definition at this late date, XTO will not have had fair notice of the claims brought against it. The Second Amended Petition fails to put XTO on notice that any party is claiming damages related to Kansas wells, making no mention of Kansas whatsoever.  Nor have Plaintiffs sought and obtained leave under Fed. R. Civ. P. 15 to amend their complaint to state a claim regarding Kansas wells.  The reason for this failure is simple:  without any interest in a Kansas well, Plaintiffs lack standing to assert such a claim.  Instead, they propose a Kansas subclass for the first time in their Motion.  However, for the reasons more fully briefed below, the requirements of Rule 23(a) prohibit plaintiffs from representing a Kansas subclass for lack of typicality, commonality, and lack of adequacy of representation.

### 3.      *Plaintiffs have waived any class other than those proposed here.*

Having waived or abandoned any claims they once sought to assert with regard to wells

outside Oklahoma, Plaintiffs cannot now resurrect those claims in the instant Motion, particularly where they have consistently filed pleadings with this Court referring to the class scope as limited to Oklahoma.  *See, generally, Moncrief v. Williston Basin Interstate Pipeline*, 174 F.3d 1151, 1161-63 (10th Cir. 1999) (abandoned claim cannot be resurrected by amendment to conform to the evidence); *see also Waters v. Weyerhaeuser Mortgage Co.*, 582 F.2d 503 (9th Cir. 1978)(no abuse of discretion in denial of leave to amend 29 months after filing of original complaint to allow plaintiffs to litigate an issue they had already conceded); *In re Scientific Control Corp. Securities, Ltd.*, 71 F.R.D. 491, 514 (S.D.N.Y. 1976)("The purpose of this latest proposal to amend is merely to fashion this litigation in such manner as to enhance its class action aspects.  The Court has not found that the Count as pleaded fails to state a claim, only that it is not susceptible of class litigation. There comes a time, when after nearly four years of litigation, there must be an end to the amending process").

Clearly, legal precedent precludes Plaintiffs' efforts to amend their class in this eleventh hour.  Not only do their efforts contravene established precedent, but create prejudicial harm for XTO.  Because Plaintiffs limited their proposed class to Oklahoma wells, XTO has not considered Kansas wells in their defense of the case, nor has XTO prepared or responded to any discovery concerning Kansas wells.

Plaintiffs have not pled claims related to Kansas wells, have no standing to prosecute this action for Kansas wells, and have formally and effectively abandoned that claim.  Accordingly, XTO prays that the Court dismiss all claims related to XTO wells in Kansas.

## II.      Plaintiffs' Efforts to Hold Class Certification Open Indefinitely.

### A.      *Plaintiffs had Ample Opportunity to Evaluate and Propose a Class.*

Plaintiffs' Motion is rife with conditions and qualifiers to its class claims.  In the proposed class definition set forth on page 11 of the Motion, Plaintiffs state "Plaintiffs anticipate seeking certification of additional classes once proper responses to outstanding discovery responses are received" before continuing on to define the Timberland Class and the two subclasses.  This statement, replicated in Footnote 1 of the Motion, is improper.

This case has been pending for nearly four years.  Plaintiffs have been afforded ample opportunity to engage in discovery of their class certification claims.  During those four years, Plaintiffs should have developed their class definition more precisely.  They did not.  As a result, Plaintiffs want class certification to extend indefinitely to undefined subclasses.  This is clearly contrary to this court's scheduling order and is an improper attempt to skirt the rules.

### B.      *Plaintiffs have but one Chance to Certify their Class(es), and that Time has Come.*

At its January 8, 2008 Status Conference, this Court entered a Scheduling Order establishing deadlines that would bring the instant class certification phase to a close.

Plaintiffs' opportunity to seek class certification is now, not some later point in time.  The parties were advised by the Court in January at the Status/Discovery Conference of the deadlines for certification discovery and briefing.  For Plaintiffs to now state, after months and years of opportunity for case development, intensive discovery specifically focused on the matter of class certification, and other trial strategy that they must "leave the door open" on their class definition because they still do not know the exact definition or scope of the class

8

they themselves propose to have certified is improper, prejudicial, and contrary to law. Plaintiffs must be limited to the class they have proposed in their Motion, and no more.

**III.   Plaintiffs' New "Breach of Contract" Claim was Never Pled.**

Finally, Plaintiffs' inclusion of statements seeking to have breach of contract claims certified against XTO must also be disregarded.  Plaintiffs have reaffirmed through pleadings and the Status Reports to this Court that their claim against XTO is an accounting claim.  See Amended Joint Status Report and Discovery Plan (Document No. 10), page 5 at Paragraph Nos. 5(A) (1), (2) and (3); see also Plaintiffs' Motion to Compel (Document No. 19), page 1 ("Plaintiffs seek an accounting from XTO regarding its underpayment of their royalties").  Plaintiffs have only brought an accounting claim against XTO.  In each of the three pleadings filed in this case in which Plaintiffs set forth their claims, Plaintiffs make no mention of any claim other than one for an accounting (and, arguably, compensation for any underpayment of royalties).  Plaintiffs have not sought leave of Court to amend their Petition to include claims for breach nor can they "bootstrap" any breach claims or have those claims certified by merely mentioning it in their Motion.  Accordingly, Plaintiffs' new claim for breach of contract should be summarily dismissed.

**IV.   Plaintiffs' Request for Injunctive Relief is Improper.**

Much like Plaintiffs' "Breach of Contract" claim, Plaintiffs did not seek injunctive relief in their Petition.  Its absence therein is fatal to Plaintiffs' Motion.  For the reasons illustrated above, Plaintiffs cannot seek injunctive relief – for the first time – within the confines of a Class Certification motion.  Moreover, Plaintiffs have failed to provide the Court with any legal authority, factual basis or other substance on which to base their claim.  Accordingly, Plaintiffs'

claim for injunctive relief should be dismissed.

## SECTION II:  CLASS CERTIFICATION BRIEFING

Having addressed Plaintiffs' misguided efforts to amend their class, and prop open the door for future class certification, XTO now addresses the merits of Plaintiffs' class certification arguments.

Because XTO believes that Plaintiffs' Motion constitutes their one opportunity to propose a class, it remains unclear to XTO whether Plaintiffs have asked this Court to certify a "Timberland" class for this litigation, or certify a statewide class, as defined in Plaintiffs' Petition.  Arguably, Plaintiffs have waived any class outside the Timberland system by virtue of failing to brief (or formally request) such a certification.  Nevertheless, because the merits of a statewide class *may* be at issue herein, and out of an abundance of caution, XTO will brief both the impropriety of Plaintiffs' Timberland class, as well as a statewide class in general.

## <u>STATUTORY REQUIREMENTS FOR CLASS ACTIONS.</u>

When determining whether a case may be certified, Fed. R. Civ. P. 23 (a) sets forth four requirements that must be present.  Fed. R. Civ. P. 23 (a) requires Plaintiffs prove 1) **numerosity**: "The class must be so numerous that joinder of all members is impracticable.", 2) **commonality**: "There are questions of law or fact common to the class.", 3) **typicality**: "The claims or defenses of the representative parties are typical of the claims or defenses of the class.", and 4) **adequacy of representation**:  "The representative parties will fairly and adequately protect the interests of the class."

In addition, Fed. R. Civ. P 23 (b) states that class actions may be maintained if all four of the 23 (a) requirements are met as well as only one of the three conditions set forth in 23 (b). Those three conditions are:

(1) [T]he prosecution of separate actions by or against individual members of the class would create a risk of:

(A)   inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Further, because Plaintiffs have proposed subclasses in their Motion, it is necessary that each subclass independently satisfy all the prerequisites of Rules 23 (a) and (b).  Fed. R. Civ. P. 23 (c) (4) (B); see also *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002).

Plaintiffs' Motion reveals that Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 23 (a).  Plaintiffs do not have common or typical claims nor are they adequate representatives

of the proposed class and subclasses.  Further, Plaintiffs cannot meet the requirements of Fed.

R. Civ. P. 23 (b).  As a result, Plaintiffs' Motion for Class Certification must be denied.

**PROPOSITION I:**
**PLAINTIFFS' ATTEMPT TO CERTIFY A KANSAS SUBCLASS TO WHICH THEY**
**DO NOT BELONG AND WHICH THEY CANNOT REPRESENT IS MISGUIDED**

In their Motion, Plaintiffs seek to certify a subclass of the Timberland Class "consisting

of royalty owners who receive royalties *from at least one well located in Kansas*."  Plaintiffs'

Brief at page 11 (emphasis added).  As illustrated above, Plaintiffs cannot propose a subclass

consisting of Kansas wells, as Plaintiffs have limited this action to Oklahoma wells in their

Petition.  Beyond that fatal flaw, however, the facts of this case also preclude certification of a

Kansas subclass, as neither of the plaintiffs own an interest in an XTO-operated well located in

Kansas.

Plaintiff Beer, as trustee, owns an interest in the Fern Parkes #1 well, located in Texas

County, Oklahoma.  See Affidavit of Jennifer Spaulding, Attachment 3 to XTO's Motion for

Summary Judgment (Ex. 40 to Notice of Removal (Document No. 1)).  Similarly, Plaintiff

Boeck owns an interest in the Leona Woods #1-17 well, also located in Texas County.  See

Plaintiffs' Response to Interrogatory No. 13, attached hereto as Ex. 1.  Neither of the named

plaintiffs have alleged any ownership in a Kansas well operated by XTO.  Yet plaintiffs seek to

represent a subclass of Kansas interest-holders for an accounting arising under Kansas oil and

gas law.

The fundamental premise of Fed. R. Civ. P. 23 (a) (3) is that a plaintiff may only sue as

for similarly situated individuals of whom their claims are "typical."  The first sentence of the

Rule makes it clear that this is one *prerequisite* for serving as a class representative.  The United

States Supreme Court has made it abundantly clear that a putative class representative is forbidden to represent a class or subclass of which he is not, first and foremost, a member. *Blum v. Yaretzky*, 497 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)

As succinctly explained by the Tenth Circuit, in *Rector v. City and County of Denver*, 348 F.3d 935 (10th Cir. 2003) (decertifying class for lack of typicality), "[by definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." 348 F.3d at 950. This is echoed by the Eleventh Circuit in *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003), which explained that "[T]ypicality measures whether there a sufficient nexus exists between the claims of the named representative and those of the class at large." Therefore "[a]ny analysis of class certification must begin with the issue of standing." Accordingly, the Court "must determine that *at least one named class representative has Article III standing to raise each class subclaim*." *Id*. (internal citations omitted, emphasis added); *accord, Barney v. Holzer Clinic*, 110 F.3d 1207, 1214 (6th Cir.1997) ("the named plaintiffs are not in the end even members of the class they seek to represent.").

Simply put, a putative class representative may not merely allege that the defendant has done some wrongful act which has injured someone, or a class, and argue that he should be allowed to sue for that wrong. As the Supreme court stated in *Blum*, *supra*, "[n]or does a plaintiff who has been subject to some injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." 457 U.S. 991, 999, 102 S.Ct. 2777, 2783.

Therefore, it is the claim of the individual which sets the parameters of any class he may wish to represent.   For example, in *Blum*, the Court held that nursing home residents, who alleged they had not been afforded notice of decision that they should be discharged or transferred to a lower level of care, could not represent a class defined in part as residents who had been transferred to a higher level facility allegedly without adequate notice, if in fact they had not.  457 U.S. at 999-1000, 102 S.Ct. at 2370-71.  In *Falcon*, *supra*, the Court held that an Hispanic-American alleging racial discrimination in promotion practices could not sue on behalf of a class of persons who had allegedly been discriminated against by not being hired in the first place, also based upon alleged racial discrimination.  457 U.S. at 157-58, 102 S.Ct. at 2370-71.

Significantly, the Supreme Court in *Falcon, and Rodriguez, supra*, did not merely redefine the class to fit the individual claims which mirrored the factual and legal issues which comprised the individual claims of the putative representatives.  Instead, the Court held that the incongruity between the claims of putative representative and his alleged class required *reversal* of the class certification order, because the lack of Article III standing, and the lack of typicality, vitiated any class claim altogether.  *Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372 (reversing Court of Appeals order affirming certification); *Rodriguez*, 431 U.S. at 406 (vacating Court of Appeals order revering denial of class certification).

In this case, Plaintiffs ask the Court to certify a subclass of royalty owners who hold interests in 67 non-Oklahoma wells.  However, pursuant to the above authority, Plaintiffs lack standing to bring claims on behalf of any Kansas subclass.  As a result, the Kansas subclass cannot be certified.

Plaintiffs also contend XTO has improperly "deducted" for gas used as fuel under the "free use of gas" lease clause, seeking to include within their class royalty owners who have allegedly "typical free gas clauses" as well as those who have allegedly "atypical free gas clauses" in the context of a breach of contract action.[2] Plaintiffs conveniently ignore that they have only brought an accounting claim against XTO.

Plaintiffs have simply failed to provide any support or even allege that either of their two leases covering Oklahoma property have the "atypical" free gas clause.  In fact, the two leases in question have the "typical" clause.  See Affidavit of Kris Terry, attached hereto as Ex. No. 7, Paragraph Nos. 26 & 27.  For these reasons, any issues involving the free gas clause are improper for certification.  See *Hines v. Widnall*, *supra*.

**PROPOSITION II:**
**PLAINTIFFS HAVE NOT SATISFIED RULE 23 (a)'s NUMEROSITY REQUIREMENT**

Numerosity must be determined on the facts of each case and size alone is not determinative.  *First Life Assur. Co. v. Mountain*, 1993 OK CIV APP 20, 848 P.2d 1177, 1179. In this case, Plaintiffs have failed to allege any facts to establish that the proposed Timberland Class is so numerous that joinder of all members is impractical.  Impracticability, as it is used here, does not mean impossibility, but extreme difficulty or inconvenience of joinder must be found.  *Shores v. First City Bank Corp.*, 1984 OK 67, 689 P.2d 299.

Plaintiffs have offered no evidence whatsoever that joinder of all XTO royalty owners from wells in Oklahoma on the Timberland system is either extremely difficult or inconvenient.

---

[2]Generally, the "free use of gas" lease clause refers to the lessor's use of gas for domestic purposes.  Plaintiffs assert no claims in this case which implicates their use of gas for domestic purposes as those claims were severed from this accounting action by the District Court of Texas County, Oklahoma.  See Stipulated Order, attached hereto as Ex. 8.

Plaintiffs essentially ignored this requirement. Having failed to meet their burden in establishing numerosity; class certification must be denied. See *Trevino v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006).

**PROPOSITION III:**
**PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'s COMMONALITY**
**REQUIREMENT**

### A.  Legal Standards for Commonality.

Rule 23(a) (2) requires that there be questions of law or fact common to the class. Even cases which may appear to hold a common issue will nonetheless fail to satisfy this requirement if a particularized inquiry is necessary. For example, in *Cherokee Nation of Oklahoma v. U.S.*, 199 F.R.D. 357 (E.D. Okla. 2001), a proposed class of Indian tribes operating Indian Health Services (IHS) programs sued the government under the Indian Self-Determination Act, seeking payment for unreimbursed expenses program costs. At certification, the Court held that commonality was lacking because any determination of whether a tribe had been fully reimbursed would require a detailed inquiry into the terms of each particular contract for which reimbursement was sought. *Id*. at 363.

The necessity of subclasses may indicate that commonality does not exist or predominate. The creation of a number of subclasses could result in some that are too small to satisfy the numerosity requirement, may make the case unmanageable, or, in a Rule 23 (b) (3) suit, may defeat the superiority requirement. MANUAL FOR COMPLEX LITIGATION, FOURTH, §21.23. Denial of class status in such circumstances in appropriate. *Id*.

**B.     The gas sales contracts under which Plaintiffs' gas is sold are not common.**

*1.      Contracts are uncommon on a statewide basis.*

Plaintiffs' gas is uncommon from other gas that XTO produces in Oklahoma, as it is sold under a unique series of contracts and transactions.  Indeed, XTO sells Plaintiffs' gas at the well to Timberland under a gas purchase contract dated March 29, 1996 (the "XTO/Timberland Contract").  See Affidavit of Kris Terry, attached hereto as Ex. 7, Paragraph No. 9.  XTO receives eighty percent (80%) of Timberland's weighted average residue price multiplied by the MMBtu's measured from the respective wells.  *Id.*  Timberland's weighted average resale price is 100% of the price received by Cross Timbers Energy Services, Inc. ("CTES"), XTO's marketing agent.  *Id.*  CTES sells gas to Duke Energy Field Services, LP ("DEFS") at the interconnect between Timberland's pipeline system and DEFS in Texas County.  *Id.*  CTES then receives a published index price, plus $0.015 to $0.005 per MMBtu.  *Id.*  In effect, XTO receives a wellhead price for gas sold from the Fern Parkes #1 and Leona Woods#1-17 wells equal to 80% of the index price determined in the downstream sale by Cross Timbers Energy Services, Inc. to DEFS. *Id.*

Outside of certain wells on the Timberland system (including Plaintiffs' wells), nowhere else in Oklahoma does XTO sell gas under the XTO/Timberland Contract.  For example, XTO sells gas at the well in Beaver County to Regency MidCon Gas, LLC on the Mocane Laverne system at a percentage of a published index less $0.25 per MMBtu (this contract was amended in 2007 to change the price to a percentage of Buyer's weighted average sales price less $0.25 per MMBtu).  See Affidavit of Kris Terry, attached hereto as Ex. 7, Paragraph No. 8.  As an additional example, XTO sells gas at the well to GPM Gas Corporation in Texas, Cimarron,

Beaver and Harper Counties at a price determined by a percentage of net residue gas value, and net natural gas liquids value. *Id.*

Needless to say, Plaintiffs' royalties are derived from these contracts. An entirely separate royalty payment analysis, involving separate contract terms and pricing mechanisms, would be required under each contract to perform an accounting. Moreover, as illustrated above, many of XTO's gas sales in Oklahoma do not involve a wholly-owned subsidiary such as Timberland. Plaintiffs herein, whose royalties are from the XTO/Timberland Contract -- one specific, unique contract out of many contracts in force throughout the state -- have nothing in common with royalty owners whose royalties are derived from other contracts.

> 2. *Contracts are uncommon amongst wells on the Timberland system.*

This striking distinction applies not only to wells dispersed throughout the state, but to the very wells connected to the Timberland system. In fact, several XTO-operated wells on the Timberland system are governed by a separate sales arrangement between XTO and Timberland which differs from the XTO/Timberland Contract applicable to Plaintiffs.

As explained in more detail below, many XTO-operated wells on the Timberland system do not produce the same type of gas as Plaintiffs' wells. These wells produce gas from a different hydrocarbon-bearing formation, that has a higher energy content. This gas is sold under a contract providing an entirely different pricing mechanism. Notably, these distinctions are not technicalities. They strike to the very core of Plaintiffs' class certification. Despite the fact that these wells are on the Timberland system, they cannot be considered "common" to Plaintiffs wells.

An accounting of royalties requires an analysis of the sales arrangements associated with the gas.  Such an individualized analysis of the gas marketing contracts as well as the lease/division order agreements predominates in this accounting action over Plaintiffs' erroneous and unsupported "common issues."  There can be no question that this case does not meet any of the requirements set forth in Rule 23 (b).  Simply put, Plaintiffs (and the other royalty owners under the XTO/Timberland Contract) have no commonality with the other Timberland royalty owners, or other royalty owners throughout Oklahoma.

> C.        **Plaintiffs' Lease Terms are not Common.**

XTO-operated wells (like Plaintiffs wells) that sell gas to Timberland under the XTO/Timberland Contract are still not suitable for accounting action class certification, as they have separate royalty provisions requiring an individualized analysis.  Plaintiffs conveniently gloss over the fact that there are individualized issues to be determined for each royalty owner in each well encompassed by the Timberland Class created by the specific language in each lease, as well as other agreements.  Instead, Plaintiffs rely on *Greghol Ltd. Partnership v. Oryx Energy Co.*, 1998 OK CIV APP 111, 959 P.2d 596, for the premise that differences in lease language does not defeat their predominance argument.  However, *Greghol* was a post-production deduction case and not an accounting action like the immediate case.  XTO does not deduct any post-production costs from Plaintiffs' royalties, rendering *Greghol* inapplicable to this matter.   It is vital in this accounting action to examine the individualized language of the agreements the royalty owners have with XTO, whether those agreements be leases, division orders or other similar types of documents, to properly account and determine if there indeed is any underpayment

*1. Plaintiffs' lease terms are different than other leases associated with plaintiffs' own wells*

Plaintiffs assert they are entitled to an accounting for one-eighth ($1/8^{th}$) of the downstream gross proceeds from the sale of gas, and that this is an issue "common" to the class. Calling this a common issue ignores the fact that the leases, which are the contracts between XTO and the royalty owners, have particular terms that have to be evaluated individually. For instance, the royalty clause in the C.A. Moore Lease, dated December 31, 1942, attached hereto as Ex. 9, under which Plaintiff Beer as trustee asserts her claim for an accounting for gas sold from the Fern Parkes #1 well is as follows:

> "The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, for gas from wells where gas only is found, and where not sold shall pay Fifty ($50.00) Dollars per annum as royalty from each well, and while such royalty is so paid such well shall be held to be a producing well under paragraph number two hereof. . . .. The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product, as royalty, one-eighth of the market value of such gas.  If said gas is sold by lessee, then as royalty one-eighth of the proceeds thereof."

Plaintiff Boeck claims a royalty interest in the Leona Woods #1-17 under a lease executed by Leona Gertrude Woods and others, dated June 17, 1943, (the "Leona Woods Lease" attached hereto as Ex. 10).  The royalty clause is as follows:

> "The lessee shall pay lessor, as royalty, one-eighth of the proceeds from the sale of the gas, as such, for gas from wells where gas only is found, and where not sold shall pay Fifty ($50.00) Dollars per annum as royalty from each well, and while such royalty is so paid such well shall be held to be a producing well under paragraph number two hereof. . . .. The lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline or any other product, as royalty, one-eighth of the market value of such gas.  If said gas is sold by lessee, then as royalty one-eighth of the proceeds thereof."

This gas well gas royalty clause is identical to the royalty clause in the C.A. Moore lease, and

each lease entitles XTO to pay royalties on its proceeds.

However, other royalty owners in the Fern Parkes #1 well derive their interest under the Clutter Lease dated February 16, 1937 ("Clutter Lease" attached hereto as Ex. 11).  The royalty clause in that lease is as follows:

> The royalties reserved by lessor, and which shall be paid by lessee, are: . . . (b) on gas (including casinghead gas) produced from said land and sold or used off the land or in the manufacture of gasoline or other product, the market value at the wells of one-eighth of the gas so sold or used, provided that if and when lessee shall sell gas (including casinghead gas) at the well lessor's royalty thereon shall be one-eighth of the amount realized from such sales . . ."

This type of lease is commonly known in the industry as a bifurcated lease.  The royalty value depends on where the gas is sold.  For gas sold on the lease, royalties are paid on the amount realized.  For gas sold off the lease or used in the manufacture of natural gas liquids, royalties are paid on the market value at the well.  Plaintiffs contend that the sale from XTO to Timberland is not a real sale, a position with which XTO disagrees.  However, assuming *arguendo* that Plaintiffs are correct, it would move the point of valuation off the lease.  The determination of the correct royalty value would then be dependent upon a market value at the well analysis, which is inherently an individual analysis requiring one to consider the characteristics of the gas, the quantity, the location, the availability of sales outlets, and comparable sales to the potential purchasers.   This example of differing royalty valuations, depending on individual lease agreements pertaining to other putative class members, is more rule than exception in that they likely will not be the same as the C.A. Moore and the Leona Woods Leases.  With each different lease comes the potential for a different royalty provision.  Thousands of XTO leases and their royalty provisions are dissimilar from those of Plaintiffs.  Each royalty provision also requires an individualized analysis, which defeats the viability of an

21

effective class.

>    2. *Plaintiffs' lease terms are also varied in comparison to others in Oklahoma.*

To the extent Plaintiffs assert that this present action be extended to include other royalty owners owning interests in other wells in Oklahoma, it would be necessary to review the terms of the individual leases underlying any wells proposed to be included.

For example, in the Highfill Lease dated March 25, 1969, and amended October 20, 1975, in Woodward County, Oklahoma (attached hereto as Ex. 12,), the royalty clause is as follows:

> "2nd. Lessee shall pay to lessor, as royalty on gas (with all of its constituents), including casinghead gas and all gaseous substances, one-eighth of that produced from said land and sold or used off the premises or in the manufacture of gasoline or other products therefrom, same to be delivered at the wells or to the credit of lessor in the pipeline to which the wells may be connected, subject to the provisions of that certain Gas Purchase Contract effective as of October 20, 1975 between lessor and lessee. Where gas from a gas well is not sold or used, lessee may pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owner or to the royalty owner's credit in the rental depository bank hereinafter designated. If such payment or tender is made it will be considered that gas is being produced within the meaning of the preceding paragraph. Lessor shall have the privilege at his risk and expense of using gas from any well, producing gas only, on the leased premises for stoves and inside lights in the principle dwelling thereon out of any surplus gas not needed for operations hereunder."

The determination of the proper royalty payment under this royalty clause could not be based on a determination of the proper royalty payment under either the C.A. Moore Lease or the Leona Woods Lease. Further, XTO has another lease in Major County in which the royalty

clause has been stricken and the sentence "This is a PAID-UP LEASE" inserted.  See Halper Lease, dated September 1, 1959 (attached hereto as Ex. 13,).

As illustrated above, these leases contain contractual variations that are unique, and must be analyzed on a case-by-case basis.  See *Mittelstaedt v. Santa Fe Minerals, Inc.*, 1998 OK 7, 954 P.2d 1203.  Importantly, each royalty provision must be calculated by the terms of each sales/gathering/marketing arrangement.   This results in a number of different royalty calculations – and would require a multitude of subclasses – that are far too numerous to contemplate.  For this reason, Plaintiffs' proposed class lacks commonality.

**D.     The Composition of Plaintiffs' Gas is not Common.**

*1.     Plaintiffs' gas has lower entrained liquids than other Timberland wells.*

Plaintiffs' wells produce "Chase" gas from the Guymon-Hugoton formation.  Gas produced from this formation generally has a low Btu content.  For example, Gas Produced from the Fern Parkes #1 well in which Plaintiff Beer serves as co-trustee has a Btu per cubic foot content of approximately 1000.  See Affidavit of Kris Terry, attached hereto as Ex. 7, Paragraph 13.  Gas produced from the Leona Woods #1-17 in which Plaintiff Boeck owns an interest has a Btu per cubic foot content of approximately 915.  *Id*.  Because of the low Btu content, neither of these wells has a significant quantity of extractable natural gas liquids.  *Id*. These types of wells are commonly referred to in the industry as "dry" gas wells.  *Id*.  Such low-Btu gas is prevalent among wells (like Plaintiffs') drilled in the Oklahoma panhandle and producing from the Guymon-Hugoton formation.

Gas produced from Plaintiffs' wells is distinguishable from other wells on the Timberland system.  Indeed, many wells on the Timberland system produce gas with a very

*high* Btu content, unlike Plaintiffs' wells.  The reason is simple:  while Plaintiffs wells produce

"Chase" gas, other wells produce from different formations.  See list of wells on Timberland

System, attached hereto as Ex. 2.  For example, the Ruby Harrison # 1-8 in Texas County,

Oklahoma, sells to Timberland, and produces from the Morrow formation.  *Id*.  Generally, gas

produced from Morrow has a higher Btu than gas produced from Chase.

       2.      *Plaintiffs gas has less entrained liquids than gas in other areas of Oklahoma.*

The story is also different throughout the state.  XTO, for example, produces gas from

the Walters # 2-30 well in Woodward County that has a Btu per cubic foot of 1089.6.  XTO

also produces gas from the Johnson # 2-10 in Major County that has a Btu per cubic foot of

1362.8, which is casinghead gas. See Affidavit of Kris Terry, attached hereto as Ex. 7,

Paragraph 19.  Gas well gas and casinghead gas are priced in different ways, and they are

marketed in different ways.  *Id*.

Therefore, the determination of whether royalty was properly calculated with respect to

gas well gas will not answer whether royalty was properly calculated with respect to casinghead

gas.  An accounting for royalties in these wells would be materially different.  *Id*.

Again, these distinctions serve to illustrate why Plaintiffs' wells are unlike others on the

Timberland system and in Oklahoma in general.  Because of these distinctions, Plaintiffs fail to

establish commonality.

      **E.**      **Liquid Sales and Gas Consumption Claims are not Common.**

Plaintiffs also claim underpayment for allegedly not being compensated for gas used as

fuel and liquids sales.  Timberland owns a gas processing plant at Tyrone, and gas gathered by

the Timberland system is processed at that plant.   Among other things, natural gas liquids are

extracted at this facility.  Plaintiffs allege that they are entitled to a share of the proceeds derived from a sale of the liquids.  In fact, Plaintiffs are compensated for these liquids based on the Btu content of the liquids when Timberland purchases the gas at the mouth of the well from XTO.  See Deposition of Bennie Kniffen, attached as Ex. 6, page 38, lines 3-14; page 39, lines 19-24.

Disregarding the fact that Timberland (a non-party), and not XTO, owns the liquids at the Plant, Plaintiffs arguments further serve to distinguish Plaintiffs' gas from other gas wells in Oklahoma and on the Timberland system.

> *Plaintiffs are compensated for 100% of volume – and liquids – produced from their wells.*

Plaintiffs characterize Timberland's use of fuel as a "deduction" from the price, and claim that the royalty owners are not compensated for Timberland's fuel use. This ignores the reality of the transaction in which Timberland buys all of the MMBtu's (volume times Btu content) metered at the mouth of the well.  Likewise, Plaintiffs are paid royalties based on this same wellhead MMBtu figure.  See Deposition of Bennie Kniffen, attached as Ex. 6, page 38, lines 3-14; page 39, lines 19-24.  The use Timberland makes of its purchased gas downstream of the well does not affect royalty owners at all and is certainly not a deduction.  Finally, Timberland's use of gas as fuel on the pipeline system does not occur on Plaintiffs' leases. Instead Timberland incurs costs downstream of the wells to operate its extensive gathering and transportation system that extends over four counties in two states. Stated succinctly, Plaintiffs are paid on 100% of the volume of gas measured at the well, multiplied by the Btu factor, and are not suffering a deduction in their royalties.

Regardless of these facts, and their preclusive effect on Plaintiffs' claims, Plaintiffs

25

continue to assert them.  However, most XTO-operated wells in Oklahoma do **not** sell to

Timberland.  Most do **not** sell to a subsidiary.  Instead, they sell to a third-party gatherer.

Plaintiffs' wells are uncommon to most XTO-operated wells.  Plaintiffs' claims have no bearing

on these other wells.  As a result, Plaintiffs do not meet the commonality requirement of Fed. R.

Civ. P. 23 (a) as they have no justiciable claims against XTO for an accounting based on any

alleged underpayment.

**PROPOSITION IV:**
**PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'S TYPICALITY**
**REQUIREMENT**

The typicality prerequisite was explained in *Baby Neal For And By Kanter v. Casey,* 43

F.3d 48 (3rd Cir. 1994):  "The typicality inquiry is intended to assess whether the action can be

efficiently maintained as a class and whether the named plaintiffs have incentives that align

with those of absent class members so as to assure that the absentees' interest will be fairly

represented."  *Baby Neal*, 43 F.3d at 57.  "Typicality" serves to prevent certification where the

legal theories of the named plaintiffs conflict with those of the absent class members.  Likewise,

it is intended to assure that the interests of the representative and the absent class members are

not antagonistic.

Representative parties satisfy the typicality requirement if the claims of the

representatives and the class members stem from the same course of conduct or are based on the

same legal or remedial theory.

XTO notes that many of the arguments asserted above regarding the failure of

commonality apply to typicality as well.  Based on these truths, the patently obvious fact is that

only one type of person is typical of Plaintiffs: a person owning a royalty interest in an XTO-

operated well, located in Oklahoma, whose royalty interest derives from the same lease (or similar lease with the same royalty provision), where the well sells to the Timberland system, under the XTO/Timberland Contract, and produces gas from the Guymon-Hugoton formation.

However, even such a narrowly defined class creates problems in light of the Oklahoma Supreme Court's decision in *Mittelstaedt v. Santa Fe Minerals, Inc.*, *supra*, which stated that, when evaluating royalty payment issues, an analysis of the specific language of the individual leases and the implied covenants that go with them is required. *Mittelstaedt*, at 1205. Such an analysis reveals Plaintiffs are not typical of any other royalty owners. Moreover, the royalty owners matching this criteria are not too numerous to necessitate a class action. For this reason, Plaintiffs class certification fails.

Similarly, Plaintiffs interests are **not aligned** with fellow putative class members. For example, because of Plaintiffs' "dry" gas, most of the liquids produced at the Tyrone Plant are generated by wells *other* than those owned by Plaintiffs – wells drilled to other formations containing gas with a higher Btu-content. Even assuming, *arguendo*, that Plaintiffs are owed royalty on liquid sales (which they are not), Plaintiffs would be diminishing the recovery of other royalty owners and class members. Under current pricing, every royalty owner receives an MMBtu adjustment on production – the volume of gas is multiplied by its Btu content. Such a calculation is equitable. Under Plaintiffs' theory, Plaintiffs would receive a royalty on liquid sales, despite the fact that the Btu content of their gas is too low to generate liquids. Stated differently, Plaintiffs would cause other royalty owners to receive a lesser royalty. For these reasons, Plaintiffs' proposed class certification falls short.

**PROPOSITION V:**
**PLAINTIFFS HAVE FAILED TO MEET RULE 23 (a)'S ADEQUACY OF**
**REPRESENTATION REQUIREMENT**

Adequacy of representation is comprised of two parts, focusing first on the adequacy of the named plaintiffs' counsel followed secondly by the adequacy of representation provided in protecting the different, separate and distinct interest of the class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). "To have standing to sue as a class representative, the plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993); *See also*, *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Monarch Asphalt Sales Co., Inc., v. Wilshire Oil Co. of Texas*, 511 F.2d 1073, 1077 (10th Cir. 1975).

By contrast, a plaintiff who is not a member of the class he seeks to represent cannot qualify as a representative of that class. *Scoufos v. State Farm Fire & Casualty Co.*, 2001 OK 113, 41 P.3d 366 ("As Scoufos's claim necessarily must proceed upon different facts and legal theory from the suggested § 4804 statutory right of recovery which the prospective class members assert, his claim is not typical of the class' and his appointment as class representative cannot be sustained."); see also *Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 906 (5th Cir. 1987); *Everitt v. City of Marshall*, 703 F.2d 207, 210 (5th Cir.), cert. denied, 464 U.S. 894 (1983).

As explained earlier, neither Plaintiff Beer, as trustee, nor Plaintiff Boeck has any interest in an XTO well located in Kansas that is connected to the Timberland system. As a

result, Plaintiffs are not members of the proposed Kansas subclass.  Plaintiffs have wholly failed to set forth any evidence that they are, or either one of them is, a member of the Kansas subclass and that the interest of the absent Kansas subclass members will be represented adequately and fairly.  The Kansas subclass cannot meet be certified.

Further, Plaintiffs have similarly failed to produce any evidence that they will adequately and fairly represent the Oklahoma subclass or the Timberland Class in general.  Instead, as evidenced above, Plaintiffs have proven that antagonistic interests *do exist* between themselves and putative class members.  Plaintiffs have wholly failed to prove that they are members of the class and subclasses which they purport to represent and also that the interest of the absent class members will be represented adequately and fairly by Plaintiffs.

Finally, counsel has failed to demonstrate that it will adequately represent the interests of Plaintiffs' proposed class.

## PROPOSITION VI:
## PLAINTIFFS HAVE FAILED TO MEET ANY OF THE RULE 23 (B) <u>REQUIREMENTS</u>

Plaintiffs have failed to present any evidence that their claims against XTO meet any one of the additional requirements for class certification found in Fed. R. Civ. P. 23 (b).  Plaintiffs acknowledge as much in their Motion for Class Certification by not asserting that any particular subsection of Rule 23 (b) has been met.  Rather, Plaintiffs state that their action may fall under one subsection of Rule 23 (b) or another and would leave it to the Court to decide which part of Rule 23 (b) applies to Plaintiffs' claims.  However, that burden belongs to Plaintiffs and not the Court.  As a result, Plaintiffs' claims under any provision found in Rule 23 (b) should be summarily denied.

A Rule 23 (b) (1) class applies when there exists a large number of separate lawsuits that would create the risk of inconsistent and varying outcomes or deciding one case would for all practical purposes dispose of the claims of other individuals not part of the suit.  See Advisory Committee Notes to Fed. R. Civ. P. 23.  As a result, class actions filed under Rule 23 (b) (1) are not common.   Plaintiffs knew when they sought certification that Rule 23 (b) (1) was inapplicable as there are no other actions, let alone a large number of separate lawsuits, against XTO seeking an accounting from wells in Oklahoma on the Timberland system.  The factual basis for application of this provision simply does not exist.

Indeed, there is absolutely no evidence presented by Plaintiffs that the prosecution of separate actions by individual class members against XTO would create a risk of inconsistent or varying adjudications with respect to individual class which would establish incompatible standards of conduct for XTO.  Fed. R. Civ. P. 23 (b) (1) (A).  Nor have Plaintiffs presented any evidence that the prosecution of separate actions by individual class members against XTO would create a risk of adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability of those other members to protect their interests.  Fed. R. Civ. P. 23 (b) (1) (B).  As a result, this matter cannot be certified under Rule 23 (b) (1).

A Rule 23 (b) (2) class action is tailored to cases where injunctive relief is sought.  The rule references circumstances where the opposing party has acted "on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole." See Advisory Committee Notes to Fed. R. Civ. P. 23.

In a thinly veiled attempt to somehow fall under the purview of Rule 23 (b) (2), Plaintiffs seek certification by claiming that injunctive relief is necessary to require XTO to comply with the terms of the 2003 class action settlement in *Booth et al. v. Cross Timbers Oil Company*, Case No. CJ-98-16, District Court of Dewey County, State of Oklahoma. There is absolutely no evidence to support Plaintiffs' bald allegations that XTO has not complied with the terms of the Booth settlement. However, if Plaintiffs believe that XTO has somehow not complied and/or is not complying with the terms of the Settlement Agreement (Document No. 22-6) or the Order Certifying Settlement Class and Approving Settlement Agreement (Document No. 22-7), their remedy is not a separate class action in the form of the instant case but rather a Motion to Enforce the Settlement Agreement in the *Booth* state court action itself.

Plaintiffs' Motion contains absolutely no evidence whatsoever that XTO has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23 (b) (2). In fact, the evidence as it relates to XTO is contrary to Plaintiffs' class action allegations. Plaintiffs have not been underpaid. Plaintiffs' royalties are not based on an intracompany sale but rather on the sale of their gas to third-party DEFS. Plaintiffs are paid for liquids produced from their respective wells and are likewise paid for the entire volume of gas produced from their respective wells. Simply put, while Plaintiffs have asserted an equitable accounting claim against XTO, it does not rise to the threshold needed for injunctive relief or class certification under Rule 23 (b) (2).

31

Plaintiffs' final available option under Fed. R. Civ. P. 23 (b) is Rule 23 (b) (3), which covers class actions in which damages are sought.  Even though they have sought injunctive relief, the true essence of Plaintiffs' accounting claim against XTO is to recover money that they believe has been underpaid to them.  In similar cases where money damages constitute the primary relief requested, courts have consistently held that even though injunctive relief is also sought, the proposed class must be certified under Rule 23 (b) (3) and must meet due process requirements.  See *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998); *Molski v. Gleich*, 318 F.3d 937, 947-48 (9th Cir. 2003); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999).

In this regard, Plaintiffs have wholly failed to provide any evidence that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Plaintiffs state that the central issue is XTO "unlawfully basing royalties on an intra-company sale, failing to pay royalties for gas used as fuel off of the leased premises, and failing to pay royalties for NGLs sold by Timberland." Motion, at p. 21. However, as previously set forth, this premise is demonstrably false and cannot be a proper basis for certification under this section.

## **CONCLUSION**

Plaintiffs' accounting claim against XTO is based on erroneous and contrived factual presumptions that do not conform to any of the documentary and deposition evidence. Plaintiffs' Motion is equally ill-founded upon on these same basic factual inaccuracies.

XTO has demonstrated that Plaintiffs have failed to meet their burden in satisfying the requirements of Fed. R. Civ. P. 23 (a) and (b) with regard to the proposed Timberland Class as well as the proposed Oklahoma and Kansas subclasses.  As a result, Plaintiffs' Motion must be denied in its entirety.

Respectfully submitted,

s/ James M. Peters

_____

James M. Peters, OBA No. 7078
Michael S. Peters, OBA No. 15328
MONNET, HAYES, BULLIS,
  THOMPSON & EDWARDS
120 N. Robinson, Suite 1719
Oklahoma City, OK  73102
Telephone:  (405) 232-5481
Facsimile:  (405) 235-9159

and

Christopher J. Perry, OBA No. 14375
LAW OFFICES OF GIOVANNI I. PERRY, PLLC
5350 South Western Avenue, Suite 605
Oklahoma City, OK  73109
Telephone:  (405) 601-2222
Facsimile: (405) 604-2704

ATTORNEYS FOR DEFENDANT
XTO ENERGY INC.

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that on this 27th day of May, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Edward L. White and Martin S. High, Attorneys for Plaintiffs
ed@edwhitelaw.com
jan@edwhitelaw.com
marty@martyhigh.com

           s/ James M. Peters
        _____