IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LADENE RAMSEY BEER, and KATHERINE K. BOECK, (collectively "Plaintiffs") on behalf of themselves and others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-798-L |
| | ) | |
| XTO ENERGY, INC. f/k/a CROSS TIMBERS OIL COMPANY, a Delaware Corporation ("XTO"), | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

Plaintiffs Ladene Ramsey Beer and Katherine K. Boeck are royalty owners in

two wells operated by defendant, XTO Energy, Inc.  Beer, as trustee, owns a royalty

interest in the Fern Parkes #1 well, located in Texas County, Oklahoma.  Boeck

owns a royalty interest in the Leona Woods #1-17 well, also located in Texas

County, Oklahoma. Both wells produce gas from the Chase formation in the

Guymon-Hugoton field.  On October 4, 2004, plaintiffs filed this class-action lawsuit

in the District Court of Texas County, Oklahoma, seeking an accounting on behalf

of themselves and "[a]ll non-governmental entities with the legal right to receive a

royalty calculated by or on behalf of the Defendant regarding production from a well

in Colorado, Kansas, New Mexico, Oklahoma or Texas."  Petition at ¶ 57 (Doc. No.

1-6).

The Petition was twice amended in state court, on January 27, 2006 and April 3, 2007.  In the Second Amended Petition, plaintiffs again seek an accounting and allege defendant employed a number of methods to underpay royalty owners.  *See* Second Amended Petition at ¶¶ 7-11 (Doc. No. 1-2). They contend defendant has not properly accounted to plaintiffs for natural gas used by compressors, has engaged in intra-company sales of natural gas and improperly used those sales as the basis for royalty payments, has failed to report deductions from intra-company sales, has sold more gas from its gathering systems than it has bought from plaintiffs, and has failed to pay royalties to plaintiffs for condensate recovered from their production.[1]  Id.  The proposed class was narrowed in the Second Amended Petition to "[a]ll non-governmental entities with the legal right to receive a royalty calculated by or on behalf of the Defendant regarding production from an Oklahoma well."  Id. at ¶ 22.  Defendant removed the action to this court on July 19, 2007, after it learned that plaintiffs were seeking damages of $27,124,500.22.   Notice of Removal at ¶ 9 (Doc. No. 1).

This matter is before the court on Plaintiffs' Motion for Class Certification. Plaintiffs now seek to certify the following class:

> Nongovernmental royalty owners who, during Relevant
> Times, received payments based on production from an

---

[1]Based on defendant's representation that it compensates royalty owners for the natural gas liquids ("NGLs") entrained in their gas stream by paying royalties based on the British Thermal Unit ("Btu") content of the gas, plaintiffs withdrew their claim for additional compensation based on the NGLs extracted at defendant's gas processing plant.

XTO-operated well for which the production is processed in Timberland's Tyrone natural gas processing plant.

  a. *Kansas Subclass.* Members of the Timberland Class who receive royalties from at least one well located in Kansas.

  b. *Oklahoma Subclass.* Members of the Timberland Class who receive royalties from at least one well located in Oklahoma.

As used in the class definitions, "Relevant Times" means the following:  (1) for members of the Kansas Subclass, for a period at least as early as March 25, 1997 to present; (2) for members of the Oklahoma Subclass, (a) for a period from July 1, 2002 to present for those bound by the *Booth* settlement, and (b) for a period from March 25, 1997 to present for those who opted out of the *Booth* settlement.

Plaintiffs' Motion for Class Certification at 11-12 (footnotes omitted) (Doc. No. 27).

The wells at issue in the proposed class are located in Oklahoma and Kansas and are operated by defendant.  Defendant sells the gas produced from the individual wells to its wholly-owned subsidiary, Timberland Gathering and Processing Co., Inc. ("Timberland"), at or near the wellhead.  The gas from the various wells is then commingled in Timberland's pipelines and transported to Timberland's Tyrone gas processing plant, where NGLs are extracted from the stream.  At the tailpipe of the Tyrone plant, Timberland sells the residue gas to Cross Timbers Energy Services, Inc. ("CTES"), another wholly-owned subsidiary of defendant.  CTES – without transporting or performing any other processing – then sells the gas to an unaffiliated company, Duke Energy Field Services, LP ("Duke"),

based on the Panhandle Eastern Index price. *See* Plaintiffs' Exhibit 18 at ¶ 5. The price received by defendant, and upon which it bases its royalty calculations, is 80 or 85 percent of the price paid by Duke to CTES. Defendant sells gas to Timberland under two contracts. Under the first contract, executed on March 29, 1996, defendant is paid 80 percent of Timberland's weighted average residue price, which is the price it receives from CTES. Plaintiffs' Exhibit 20 at art. V, sec. 1. This contract governs the sale of gas from the Chase formation, from which the majority of the wells in the class produce. The second contract was executed on June 1, 1997. This contract, which governs sales of gas from zones below the Chase formation, specifies that defendant receives a price equal to 85 percent of Timberland's weighted average sales price. Plaintiffs' Exhibit 22 at art. IV, sec. 1(a). This contract provides the price for gas produced from 62 of the 290 wells at issue. *See* Exhibit 2 to Defendant XTO Energy Inc.'s Response in Opposition to Plaintiffs' Combined Motion for Class Certification and Brief in Support (Doc. No. 38-3).

Whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical considerations. *See* <u>Reed v. Bowen</u>, 849 F.2d 1307, 1309 (10th Cir. 1988).

> The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a). Rule 23(a) imposes four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

J.B. ex rel. Hart  v. Valdez, 186 F.3d 1280, 1287-88 (10th Cir. 1999) (citations omitted).  If the court finds plaintiffs can meet these four threshold requirements, "it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).  When ruling on a motion for class certification, the court accepts as true the allegations contained in the complaint. Id. at 1290 n.7.  The court, however, "need not blindly rely on conclusory allegations which parrot Rule 23 requirements . . . ." Id. Rather, plaintiffs "must demonstrate, under a strict burden of proof, that all of the requirements of 23(a) are clearly met." Rex v. Owens ex rel. State of Oklahoma, 585 F.2d 432, 435 (10th Cir. 1978).  Moreover, the court does not consider the merits of plaintiffs' case when ruling on the class certification motion.  Nonetheless, "while a district court may not evaluate the *strength* of a cause of action at the class certification stage, it must consider, without passing judgment on whether plaintiffs will prevail on the merits, whether remedying the harm alleged can be done on a class-wide basis in conformity with Rule 23(b)(2)." Shook v. Board of County

Comm'ns of the County of El Paso, 543 F.3d 597, 612 (10th Cir. 2008) (emphasis in original).

Beginning on October 6, 2008, the court held a two-day evidentiary hearing on the class certification issue.  After reviewing the evidence and the case law, the court found plaintiffs failed to present any evidence regarding adequacy of representation.  Rather than deny the motion to certify on this basis, the court directed plaintiffs to present what they considered to be appropriate and sufficient evidence to establish both components of the adequacy-of-representation prong. In addition, the court invited plaintiffs to amend their complaint to add a representative plaintiff from Kansas if they believed a Kansas representative was warranted.  In accordance with the court's order, plaintiffs filed supplemental materials in support of their motion for class certification, to which defendant has responded.  Plaintiffs did not, however, seek leave to amend their complaint to add a Kansas representative.  On January 15, 2009, Tim Goddard filed a contingent motion to intervene, seeking leave to intervene *only* if the court found plaintiffs could not adequately represent the Kansas subclass.

To meet their burden with respect to the numerosity element, plaintiffs must establish "that the class is so numerous as to make joinder impracticable." Peterson v. Oklahoma City Housing Auth., 545 F.2d 1270, 1273 (10th Cir. 1976).  There is no set number at which numerosity is established, nor may numerosity be presumed. Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  Plaintiffs allege the

proposed class consists of more than 200 individual wells, each of which may have numerous royalty owners who reside in many different states.  The evidence reflects that 290 wells are in the proposed class, of which approximately 67 are in the Kansas subclass.  *See* Exhibit 2 to Defendant XTO Energy Inc.'s Response in Opposition to Plaintiffs' Combined Motion for Class Certification (Doc. No. 38-3)

In its response, defendant did not dispute the number of wells at issue, but argued plaintiffs cannot include Kansas wells in the proposed class.  Defendants contend plaintiffs do not have standing to assert claims on behalf of Kansas royalty owners.  Defendant also claimed plaintiffs' attempt to redefine the class was not timely and that plaintiffs abandoned any claim to represent Kansas royalty owners when they amended their Petition to limit the class to Oklahoma wells.  In addition, defendant argued plaintiffs had not demonstrated that joinder of possible plaintiffs was not practicable.  At the hearing, however, defendant conceded plaintiffs could establish numerosity,[2] and the court concurs based on the evidence presented.  In addition, the court rejects defendant's abandonment argument, as the case law clearly holds that class-certification determinations are subject to modification based on changing circumstances.  *See* Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006).

---

[2]Defendant did not, however, concede that plaintiffs have standing to assert claims on behalf of Kansas royalty owners.  That issue, however, is more appropriately addressed under the typicality requirement.

7

The second 23(a) prerequisite mandates the existence of "questions of law *or* fact common to the class."   Fed. R. Civ. P. 23(a)(2) (emphasis added). "[C]ommonality requires only a single issue common to the class"[3] and, at this stage of the analysis, it is not necessary that the issue predominate.  Commonality is established if the members of the putative class "possess the same interest and suffer the same injury." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).  Moreover, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983).

Plaintiffs assert they have satisfied the commonality requirement because defendant determines its royalty payments for all members of the class based on the same formula and one of the key components of that formula – the price – is based on a transaction between affiliated companies, which is not proper under either Oklahoma or Kansas law.  According to plaintiffs, the issue of law common to all members of the class is whether royalty payments can be based on this intra-company sale.  Defendant counters that commonality does not exist because the class members' leases do not contain identical royalty provisions and the gas produced from plaintiffs' wells is lower in Btu content than gas from other class members' wells.  Defendant also contends the lease terms are not common,

[3]J.B. ex rel. Hart, 186 F.3d at 1288.

8

because some members of the class have bifurcated leases under which the royalty value depends on where the gas is sold.[4]  Plaintiffs note that the vast majority of the leases on the wells at issue are proceeds leases and argue that defendant cannot have it both ways:  it cannot claim that it buys all gas at the wellhead and then assert that some contracts provide for a downstream sale.  Defendant's final commonality argument is that plaintiffs' wells produce Chase gas from the Guymon-Hugoton field and this gas has a lower Btu content than gas produced from other formations.

Notwithstanding defendant's arguments, the court finds plaintiffs have established the commonality prong.  At the hearing, defendant's own employees and expert witness conceded that there is no difference in how royalties are paid to members of the class based on lease language, Btu content of the well,[5] or geographic location.  All members of the class are paid based on the same formula, and that formula has at its heart prices that plaintiffs contend are based on intra-company sales.  As all members of the putative class "possess the same interest and [have suffered] the same injury"[6], commonality exists.

---

[4]Defendant's argument that plaintiffs' lease terms vary from other XTO-produced wells in Oklahoma is irrelevant given plaintiffs' limitation of the class to the Timberland system.  Plaintiffs have not moved for state-wide certification.

[5]To calculate royalty payments, defendant uses the following formula:  (MMcf) x (MMBtu) x (index price) x (percentage factor) x (royalty rate).  The formula therefore already adjusts for differences between drier gas from the Chase formation and "wetter" gas – that is gas with more entrained NGLs – from deeper formations.

[6]Falcon, 457 U.S. at 156.

9

In addition to members of the class having common claims, the claims presented by the named plaintiffs must be typical of the claims of the class as a whole.  Defendant argues plaintiffs cannot meet the typicality element with respect to the Kansas subclass because they lack standing to assert such claims.[7]  "By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23."  <u>Rector v. City and County of Denver</u>, 348 F.3d 935, 950 (10th Cir. 2003).  Article III standing requires

> (1) that the plaintiff "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical'"; (2) that the injury is "'fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court'"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

<u>Baca v. King</u>, 92 F.3d 1031, 1035 (10th Cir. 1996) (citations omitted).

The court finds plaintiffs have standing to assert claims on behalf of the Kansas subclass as the injury in fact they have allegedly suffered is identical to that suffered by the Kansas subclass.  Both defendant's officers and its expert witness conceded that all royalty owners, regardless of well location, are treated identically by defendant for purposes of royalty payments.  A decision in favor of plaintiffs will redress any injury suffered by the Kansas subclass.  The cases cited by defendant in support of its standing argument are inapposite because, based on plaintiffs'

---

[7]Defendant concedes plaintiffs standing to represent Oklahoma royalty owners.

allegations, they have suffered the same injury as that allegedly suffered by the Kansas subclass.  Moreover, it is undisputed that the gas produced by plaintiffs' wells is commingled with gas from the Kansas wells and is transported, processed, and sold in the same manner according to the same contracts and formula.

The final Rule 23(a) requirement is that the named plaintiffs and their counsel will adequately represent the class.  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002), *cert. denied sub nom.* Brelsford v. Rutter & Wilbanks Corp., 539 U.S. 915 (2003) (*quoting* Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (10th Cir. 1998)).  Defendant attempts to manufacture conflicts between the class members based on differences in lease language and Btu content of the wells.  As noted above, however, defendant's identical treatment of all royalty owners has made these differences irrelevant to the question at issue in this case.

In their affidavits, Beer and Boeck represent they are willing and able to assume the responsibilities of representing the class.  Beer is particularly cognizant of the duties involved in such representation as she was a named representative in a class-action case filed in state court against defendant.  *See* Booth v. Cross Timbers Oil Co., Case No. CJ-98-16 (Dewey County, Okla. filed Apr. 3, 1998).  Their

11

affidavits demonstrate they understand the scope of the class and that no known conflicts exist between them and members of the class.  There is no dispute that counsel for plaintiffs have successfully prosecuted numerous class actions and other complicated litigation in both state and federal court.  To date, their prosecution of this case has been vigorous and tenacious.  The court therefore finds plaintiffs have established the adequacy of representation prong.

Having found that plaintiffs satisfy the requirements of Rule 23(a), the court must now determine whether this action qualifies for class certification under Fed. R. Civ. P. 23(b).  Plaintiffs allege certification is proper under either 23(b)(1) or (b)(2), which provide:

> (b) Types of Class Actions.   A class action may be maintained if Rule 23(a) is satisfied and if:
>
>> (1) prosecuting separate actions by or against individual class members would create a risk of:
>>
>>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>>
>>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

12

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b)(1)-(2). "Subsection (1)(A) focuses on the risk of separate adjudications to the nonclass party", that is defendant, while "(1)(B) focuses on the risk of separate actions to the individual potential class members". In re Integra Realty Resources, Inc., 354 F.3d 1246, 1263 n.6 (10th Cir. 2004). Certification under (b)(1)(A), however, "requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.'" Id. at 1263-64 (citation omitted). Certification under (b)(2) is proper if two requirements are met. First, the defendant's actions must be "based on grounds generally applicable to all class members." Shook, 543 F.3d at 604. Second, "the latter half of Rule 23(b)(2) requires that final injunctive relief be appropriate for *the class as a whole.*" Id. (emphasis in original). Furthermore, "[a]t the class certification stage, the injunctive relief sought must be described in reasonably particular detail such that the court can at least 'conceive of an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the requirements of Rule 23(b)(2)." Id. at 605.

Defendant contends 23(b)(1) is inapplicable because there are no other pending actions with respect to the issues raised in this case. There is, thus, no evidence of a risk of any inconsistent rulings. Defendant also argues plaintiffs have

13

not sustained their burden of showing that resolution of this action would decide the rights of absent class members.  The court concurs with defendant's analysis; the "mere possibility" of a *stare decisis* effect is insufficient to justify a (b)(1) class. Moreover, given that plaintiffs seek significant monetary damages, due process requires class members be given the option to opt out of this action.  *See* Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 n.3 (1985).

Defendant also argues certification under (b)(2) is inappropriate because plaintiffs have sought an accounting and resultant monetary damages, not an injunction.  Defendant is correct that no request for injunctive relief is pled in the Second Amended Petition.[8]   Moreover, although plaintiffs maintain that "XTO improperly based royalties on a related party sale, lumping them under an improper contract, making injunctive relief proper under (b)(2)",[9] they do not specify the injunction that should issue beyond one "requiring XTO to begin properly paying royalties and accounting to Plaintiffs and the Timberland Class."  Plaintiffs' Motion for Class Certification at 1 (Doc. No. 27).   An injunction requiring defendant to properly pay royalties is, however, be too vague to satisfy Rule 65.  *See* Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004).  Plaintiffs' failure to request injunctive relief in their Second Amended Petition and their failure to "describe in reasonable

---

[8]The only prayer for injunctive relief in the Second Amended Petition asks the court to prohibit defendant from destroying documents during the pendency of this action.  Second Amended Petition at ¶ 25-26 (Doc. No. 1-2).

[9]Plaintiffs' Reply Brief Re Class Certification at 1 (Doc. No. 46).

14

detail . . . the act or acts sought to be restrained"[10] is fatal to their attempt to certify a class under (b)(2).  The court therefore concludes that certification is not warranted under Fed. R. Civ. P. 23(b)(2).

Plaintiffs also contend certification is proper under Rule 23(b)(3), which permits maintenance of a class action if the court finds "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997).  Given their identical treatment by defendant, the class members possess such cohesion.  All members of the class base their claims on the same legal theory:  that defendant's royalty payment formula has at its heart a price component that is improper under Oklahoma and Kansas law.  The question of defendant's liability is central to all class members and is subject to generalized proof.  The variations in Btu content of the wells and lease language are immaterial given defendant's identical treatment of all class members for royalty purposes. Those individual differences do not predominate over the common issue of whether defendant may base its royalty payments on an alleged intra-company sale.

In making the superiority determination, the court must examine:

---

[10]Fed. R. Civ. P. 65(d)(1).

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The first and second factors weigh in favor of certification.  No putative class member has indicated an interest in pursuing an individual action, and the parties have not notified the court of any other pending litigation concerning the issues presented by this case.[11]  Concentrating the litigation in this forum appears desirable as the majority of the wells at issue and the Tyrone processing plant are located in the Western District of Oklahoma.  Manageability does not appear to be a problem. The members of the class are finite and known, and even defendant's employees testified that recalculating royalties due would be a rather simple mathematical task that can be mechanized.  Moreover, plaintiffs have established there is little incentive

---

[11]The court takes judicial notice that a putative class action is currently pending in the District of Kansas against defendant.  Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., Case No. 08-1330-JTM (D. Kan. filed Oct. 24, 2008).  In the Kansas action, plaintiff contends defendant underpaid royalties by taking improper deductions and failing to obtain the best reasonable price.  It is unclear whether the price claims in the Kansas case overlap the claims in this case.  The court notes, however, that defendant – the party most familiar with the allegations in both cases – has not argued that the Kansas case presents the same issues.

to bring individual suits, thus making a class action the superior vehicle in which to bring these claims.

In sum, the court concludes plaintiffs have met their burden of showing this case should proceed as a class action. Plaintiffs' Motion for Class Certification (Doc. No. 27) is therefore GRANTED. The following class is certified in this case:

> Nongovernmental royalty owners who, during Relevant Times, received payments based on production from an XTO-operated well for which the production is processed in Timberland's Tyrone natural gas processing plant.
>
> a. *Kansas Subclass.* Members of the Timberland Class who receive royalties from at least one well located in Kansas.
>
> b. *Oklahoma Subclass.* Members of the Timberland Class who receive royalties from at least one well located in Oklahoma.
>
> As used in the class definitions, "Relevant Times" means the following: (1) for members of the Kansas Subclass, for a period at least as early as March 25, 1997 to present; (2) for members of the Oklahoma Subclass, (a) for a period from July 1, 2002 to present for those bound by the *Booth* settlement, and (b) for a period from March 25, 1997 to present for those who opted out of the *Booth* settlement.

Plaintiffs' counsel of record are appointed as counsel for the class. As the court has determined that certification is appropriate under Fed. R. Civ. P. 23(b)(3), notice must be given to the class members. The court therefore directs the parties to confer and submit to the court within 20 days of the date of this order a notice to be served upon class members pursuant to Fed. R. Civ. P. 23(c)(2)(B). If the parties

are unable to agree on the text of the notice, they shall jointly file plaintiffs' proposed text interlineated with defendant's objections.  Each party may also submit a separate brief in support of its position; the brief shall be filed simultaneously with the redlined version of plaintiffs' proposed text and may not exceed ten pages without leave of court.

It is so ordered this 20th day of March, 2009.

*Tim Leonard*

TIM LEONARD
United States District Judge

18