IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LADENE RAMSEY BEER, and )
KATHERINE K. BOECK, (collectively )
"Plaintiffs") on behalf of themselves and )
others similarly situated, )
 )
                      Plaintiffs, )
 )
vs. )    Case No. CIV-07-798-L
 )
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
 )
                      Defendant. )

# O R D E R

Plaintiffs Ladene Ramsey Beer and Katherine K. Boeck are royalty owners in two wells operated by defendant, XTO Energy, Inc. ("XTO"). Beer, as trustee, owns a royalty interest in the Fern Parkes #1 well, located in Texas County, Oklahoma. Boeck owns a royalty interest in the Leona Woods #1-17 well, also located in Texas County, Oklahoma. Both wells produce gas from the Chase formation in the Guymon-Hugoton field. On October 4, 2004, plaintiffs filed this class-action lawsuit in the District Court of Texas County, Oklahoma, seeking an accounting on behalf of themselves and members of the class. After the Petition was twice amended in state court, defendant removed the action to this court on July 19, 2007 pursuant to the Class Action Fairness Act.

Although the court issued an order certifying this lawsuit as a class action,[1] this matter is before the court on a motion for summary judgment presented by the named representatives solely on their behalf. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

---

[1] *See* Beer v. XTO Energy, Inc., Case No. CIV-07-798-L, order at 17 (W.D. Okla. Mar. 20, 2009) (Doc. No. 75).

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that plaintiffs are royalty owners in wells operated by XTO that produce natural gas. XTO sells the gas produced from plaintiffs' individual wells to its wholly-owned subsidiary, Timberland Gathering and Processing Co., Inc. ("Timberland"), at the wellhead. The gas from plaintiffs' wells and other wells operated by XTO is then commingled in Timberland's pipelines and transported to Timberland's Tyrone gas processing plant, where natural gas liquids are extracted from the stream. At the tailpipe of the Tyrone plant, Timberland sells the residue gas to Cross Timbers Energy Services, Inc. ("CTES"), another wholly-owned subsidiary of XTO. CTES – without transporting or performing any other processing – then sells the gas to an unaffiliated company, Duke Energy Field Services, LP ("Duke"),[2] based on the Panhandle Eastern Pipeline index price. *See* Exhibit 15 to Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and Ramsey at ¶ 5 [hereinafter cited as "Plaintiffs' Motion"]. CTES pays 100 percent of the price it receives from Duke to Timberland. Transcript of Hearing on Class Certification at 241 [hereinafter cited as "Transcript"].

---

[2] Duke is now known as DCP Midstream. Affidavit of Kris L. Terry at ¶ 13.

XTO pays plaintiffs royalties based on a Gas Purchase Contract entered into between XTO and Timberland on March 29, 1996. Exhibit 12 to Plaintiffs' Motion.[3] This contract provides that Timberland will pay XTO "eighty percent (80%) of the Weighted Average Residue Price". Id. at 4. The "Weighted Average Residue Price" is defined as "the total dollars received for residue Gas sold by [Timberland] at the tailgate of the Tyrone Plant during any month less the total dollars paid to others to transport such residue Gas, divided by the total BTUs of residue Gas, stated in millions of BTUs, sold during that same month." Id. at 3. The parties agree that the result of this contract is that the wellhead price paid by Timberland to XTO is 80 percent of the price paid by Duke at the tailgate of the Tyrone plant. Transcript at 240.

In addition to being wholly owned subsidiaries of XTO, Timberland and CTES share officers and directors with XTO. At the class certification hearing, Nick Dungey, who is both a senior vice president for natural gas operations for XTO and the chairman and president of Timberland, testified that everyone on the Timberland Board of Directors is also associated with XTO. Mr. Dungey acknowledged that, in fact, there are no outside directors on either Timberland's or CTES's board. Transcript at 294. While Timberland also buys gas from other producers, 70 percent of the gas processed through the Tyrone plant is from XTO-operated wells.

---

[3]The March 29, 1996 contract was entered into by Cross Timbers Oil Company ("Cross Timbers") and Timberland. In 1996, XTO was known as Cross Timbers. Cross Timbers changed its name to XTO Energy, Inc. in 2001. *See* Exhibit 13 to Plaintiffs' Motion at ¶ B.

4

Transcript at 275. Similar to Timberland's contracts with XTO, its contracts with outside producers "are all structured as a wellhead purchase contract based on some percent of index which is adjusted at the wellhead." Transcript at 276. No evidence of the percentage reduction for those contracts, however, has been submitted.

Plaintiffs contend Oklahoma law prohibits computing royalty payments based on sales between controlled and affiliated companies. In support of this argument, they cite Howell v. Texaco Inc., 112 P.3d 1154 (Okla. 2004), in which the Oklahoma Supreme Court found:

> A royalty owner has a right to be paid on the best price available. When the actual value is not obtainable because of a producer's self-dealing, the courts will carefully scrutinize the transactions on which the royalty payments are based. Whenever a producer is paying royalty based on one price but it is selling the gas for a higher price, the royalty owners are entitled to have their payments calculated based on the higher price. The plaintiffs here are entitled to have their royalty payments based on the prevailing market price or the work-back method, whichever one results in the higher market value. We hold that an intra-company gas sale cannot be the basis for calculating royalty payments.

Id. at 1160 (citations omitted). XTO attempts to distinguish Howell on the basis that the sales in Howell were between divisions of the same company, rather than between separate corporate entities. Citing Tara Petroleum Corp. v. Hughey, 630 P.2d 1269, 1275 (Okla. 1981), XTO argues that its sales to Timberland can be ignored only if plaintiffs establish not only common control of the two entities, but

5

also that Timberland's existence is a design or scheme to perpetrate fraud or that Timberland is merely an instrumentality of XTO. XTO, however, misreads Tara Petroleum. The portion of Tara Petroleum cited by XTO is not applicable to the case at hand, but rather applies "when an assignment has been made to or a gas purchase contract negotiated with an independent third party." Tara Petroleum Corp., 630 P.2d at 1275. There is no dispute that the contract at issue here was not "negotiated with an independent third party." Id. Indeed, XTO admits that the contract between it and Timberland is not arm's-length[4] and does not dispute it controls both Timberland and CTES.[5] The court therefore finds this action is controlled by Howell.

Under Howell, there are three methods for establishing the value of gas at the wellhead. "The first and most preferred is an actual sale reached through arm's length negotiations." Howell, 112 P.3d at 1159. If there is not an arm's-length sale at the wellhead, the value of the gas is determined either by evidence of the prevailing market rate or by the work-back method. Id. The prevailing market rate

---

[4]Deposition of Kenneth Lee Acklie at 102-105 (Exhibit 7 to Plaintiffs' Motion); Deposition of Terry Schultz at 113 (Exhibit 9 to Plaintiffs' Motion); Transcript at 78.

[5]Plaintiffs' third statement of undisputed facts states, "XTO controls Timberland and CTES." Plaintiffs' Motion at 3. In response to this statement, XTO merely stated "XTO disputes that CTES and Timberland are not separate entities." Defendant's Response to Plaintiffs' Combined Motion for Summary Judgment at 3 (Doc. No. 86). Plaintiffs' third statement, however, did not address whether Timberland and CTES were separate entities. Rather, the statement concerned whether common control existed, and XTO did not address this issue in its response. As XTO did not specifically controvert this fact in its response to plaintiffs' motion, it is deemed admitted pursuant to LCvR 56.1(c).

is demonstrated by arm's-length sales at the well that are close in time to the sale at issue or by arm's-length sales at other wells in the vicinity. "Under the work-back method, the market value at the wellhead is calculated by subtracting the allowable costs and expenses from the first downstream, arm's-length sale." Id. The producer has the burden to prove not only the reasonableness of the costs, but also that incurring those costs enhanced the value of the gas. Id. at 1160; Mittelstaedt v. Santa Fe Minerals, Inc., 954 P.2d 1203, 1205 (Okla. 1998).

Based on these standards, the court finds the XTO-Timberland contract cannot be used to calculate plaintiffs' royalties as it not an arm's-length transaction and is between controlled, affiliated companies. While XTO argues the 80 percent contract is consistent with the prevailing market price, it offers no evidence of other Timberland contracts for gas produced from wells in the vicinity of plaintiffs' wells. At best, XTO's evidence demonstrates that Timberland buys gas from producers other than XTO pursuant to "contracts wherein the price is calculated as a percentage of an index price". Affidavit of Kris L. Terry at ¶ 1. XTO, however, does not specify the index price used or, more importantly, the percentage deduction from that index price.[6] The court, thus, has no evidence that demonstrates the 80 percent affiliated contract reflects the prevailing market price.[7] Likewise, XTO has presented

---

[6]During the class certification hearing, Mr. Dungey simply testified that the unaffiliated "contracts are all structured as a wellhead purchase contract based on *some percent* of index which is adjusted at the wellhead." Transcript at 276 (emphasis added).

[7]XTO's asserts "[t]he fact that Timberland purchases gas from unaffiliated third-party producers on the same terms as Timberland's contract with XTO is further evidence in support of

7

no evidence to sustain its burden of proof on the work-back method. XTO offers no evidence of the post-production costs incurred to transport, blend, compress, and dehydrate plaintiffs' gas; nor does it provide proof that royalty revenues were increased in proportion to the costs incurred. See Mittelstaedt, 954 P.2d at 1209. While defendant argues plaintiffs' summary judgment motion is premature,[8] this assertion rings hollow as it does not present a Rule 56(f) affidavit[9] and the evidence

---

upholding the fairness of such contract." Defendant's Response to Plaintiffs' Combined Motion for Summary Judgment at 14. This argument misses the mark for two reasons. First, as noted, XTO did not offer evidence of any contracts between Timberland and unaffiliated third-party producers and so the court cannot determine that those contract contain the "same terms" as XTO's contract with Timberland. Second, the issue before the court is not the fairness of XTO's contract with Timberland; rather, the issue is the price on which plaintiffs' royalty payments should be based. Furthermore, XTO's citation of Ladd Petroleum Corp. v. Oklahoma Tax Comm'n, 767 P.2d 879 (1989), is inapposite. Contrary to defendant's assertion, the Court in Ladd Petroleum did not find that "a producing entity may enter into a sales contract with a related purchasing entity when the terms of the contract are identical to contracts entered into by the purchasing entity with third-party producers." Defendant's Response to Plaintiffs' Combined Motion for Summary Judgment at 14. Rather, the Court was reciting a fact that had been established in that case. In this case, however, XTO has failed to demonstrate the identity of contracts.

[8]Defendant's Response to Plaintiffs' Combined Motion for Summary Judgment at 20.

[9]Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed. R. Civ. P. 56(f). The court does not construe the Affidavit of Kris L. Terry as meeting this requirement, as Ms. Terry merely indicates what facts would be required to perform the Mittelstaedt analysis, but not why XTO cannot present such facts to the court. See Affidavit of Kris L. Terry at ¶¶ 20-21.

needed to establish the elements of the work-back method is solely within its custody and control. XTO misapprehends its burden on summary judgment. At this stage in the proceedings, it cannot merely assert that factual issues exist. Rather, it must "direct the court to *facts* which establish a genuine issue for trial. In the face of a properly supported motion for summary judgment, the nonmoving party may not rely upon unsupported allegations without 'any significant probative evidence tending to support the [claim].'" White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995) (*quoting* Anderson, 477 U.S. 259) (emphasis in original) (further quotation omitted).

As XTO bears the burden of proving the elements of the work-back method and has not done so, the only evidence before the court of an arm's-length value for the gas at issue is the price paid by Duke. As this price is 20 percent greater than the price on which XTO calculated plaintiffs' royalties, they are entitled to the higher price. Howell, 112 P.3d at 1160; Tara Petroleum, 630 P.2d at 1274. XTO does not dispute the results of the calculations provided by plaintiffs; the court thus finds the named plaintiffs are entitled to additional royalty payments in the amount of $8,950.14 and prejudgment interest in the amount of $3,828.53 through December 31, 2008.[10]  *See* Exhibit 18 to Plaintiffs' Motion.

---

[10]Of the total amount of underpaid royalties, $7,288.40 is attributable to the Fern Parkes #1 well, with the remaining $1,661.74 attributable to the Leona Woods #1-17 well. With respect to prejudgment interest, $2,950.09 is attributable to the Fern Parkes #1 well and $878.44 is attributable to the Leona Woods #1-17 well.

In sum, Plaintiffs' Motion for Summary Judgment for Plaintiffs, Beer and Ramsey (Doc. No. 81) is GRANTED with respect to the claims for the representative parties in their individual capacities. The court expresses no opinion on the class claims. Plaintiffs' Motion to Strike Defendant's Surreply or, in the Alternative, Plaintiffs' Application for Leave to File a Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment (Doc. No. 99) is DENIED. Defendant's Motion to Strike Plaintiffs' Response to Defendant's Suggestion of Additional Authority to Plaintiffs' Motion for Summary Judgment (Doc. No. 105) is GRANTED.[11] In light of this ruling, Defendant's Alternative Motion for Leave to Respond to Plaintiffs' Response to Defendant's Suggestion of Additional Authority to Plaintiffs' Motion for Summary Judgment (Doc. No. 105) is DENIED.

It is so ordered this 5th day of February, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge

---

[11] The court considered defendant's citation of additional authority when ruling on Plaintiffs' Motion, but finds <u>Cactus Petroleum Corp. v. Chesapeake Operating, Inc.</u>, __ P.3d __, 2009 WL 30003910 (Okla. 2009), inapposite as it concerned working interest owners as opposed to royalty owners. As the Oklahoma Supreme Court has noted, working interest owners "have input into the cost-bearing decisions. The royalty owners have no such input after they have leased." <u>Wood v. TXO Prod. Corp.</u>, 854 P.2d 880, 883 (Okla. 1992). In addition, the fees at issue in <u>Cactus Petroleum</u> were only 2 to 3 percent, which the trial court found – based on expert testimony – were reasonable and customary in the industry. <u>Cactus Petroleum Corp.</u>, 2009 WL 30003910 at *5. No such showing has been made here.