IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LADENE RAMSEY BEER, and )
KATHERINE K. BOECK, (collectively )
"Plaintiffs") on behalf of themselves and )
others similarly situated, )
)
                      Plaintiffs, )
)
vs. )   Case No. CIV-07-798-L
)
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
)
                      Defendant. )

# **O R D E R**

Plaintiffs Ladene Ramsey Beer and Katherine K. Boeck are royalty owners in two wells operated by defendant, XTO Energy, Inc. ("XTO"). Beer, as trustee, owns a royalty interest in the Fern Parkes #1 well, located in Texas County, Oklahoma. Boeck owns a royalty interest in the Leona Woods #1-17 well, also located in Texas County, Oklahoma. Both wells produce gas from the Chase formation in the Guymon-Hugoton field. On October 4, 2004, plaintiffs filed this class-action lawsuit in the District Court of Texas County, Oklahoma, seeking an accounting on behalf of themselves and members of the class. After the Petition was twice amended in state court, defendant removed the action to this court on July 19, 2007 pursuant to the Class Action Fairness Act. On March 20, 2009, the court certified this case as a class action. Beer v. XTO Energy, Inc., Case No. CIV-07-798-L, order at 17 (W.D. Okla. Mar. 20, 2009) (Doc. No. 75). Two subclasses comprised the class. Both

subclasses consisted of non-governmental royalty owners who "received payments based on production from an XTO-operated well for which the production is processed in Timberland's Tyrone natural gas processing plant." Id. The only difference between the subclasses was the physical location of the producing wells. The Oklahoma subclass consisted of members whose wells were located in Oklahoma; the Kansas subclass included members whose wells were located in Kansas.

Shortly after the court issued its order certifying this matter as a class action, plaintiffs filed a motion for summary judgment solely on behalf of the named plaintiffs in their individual capacities and not as class representatives. Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and Ramsey [sic][1] (Doc. No. 81). On February 5, 2010, the court issued an order granting plaintiffs' motion with respect to the claims of Beer and Boeck in their individual capacities. Beer, order at 10 (W.D. Okla. Feb. 5, 2010) (Doc. No. 148). The court specifically noted that it was expressing no opinion on the class claims as they were not before the court. Id.

On the day before motions for summary judgment were due under the scheduling order, plaintiffs filed a motion for leave to file a second motion for summary judgment. As the motion indicated that defendant objected, the court

---

[1]The title of the motion is incorrect. The motion should have been titled "Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and *Boeck*". There is no individual plaintiff named "Ramsey".

2

called for an expedited response from defendant. Beer, order at 1 (W.D. Okla. Feb. 3, 2010) (Doc. No. 147). Before the court could issue this order and before defendant filed its response to the motion for leave, plaintiffs filed their second motion for summary judgment without leave. The second motion sought summary judgment solely on the issue of damages for the class. After receiving defendant's response, the court issued an order permitting the filing of plaintiffs' second motion for summary judgment. Beer, order at 2 (W.D. Okla. Feb. 8, 2010) (Doc. No. 154). The court noted:

> The filing of more than one motion for summary judgment in this case is not an efficient use of counsels' and the court's time; one motion for summary judgment on behalf of the class would have been a more expeditious use of judicial resources. Nonetheless, while the court does not countenance plaintiffs' litigation tactics, it finds a motion for summary judgment on behalf of the class might assist the court and the parties in narrowing the issues for trial.

Id. at 1-2. On March 16, 2010, the court issued an order denying plaintiffs' second motion for summary judgment. The court found the motion was premature as plaintiffs had not sought, nor had there been a ruling on the issue of liability with respect to the class. Beer, order at 4 (W.D. Okla. Mar. 16, 2010) (Doc. No. 182).

In addition, the court issued an order for plaintiffs to show cause why they should not be removed as representatives for the class and why class counsel should not be removed as attorneys for the class. Id. at 5. The court noted its "obligation 'to monitor the appropriateness of class certification throughout the

3

proceedings and to modify or decertify a class at any time before final judgment' should the circumstances warrant." Id. at 4-5 (*quoting* In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004)). The court held the show cause hearing on April 2, 2010. Based on the parties' arguments and representations at the hearing and the entire record in this case, the court makes the following findings.

Rule 23(c) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Indeed, the court has a continuing obligation to monitor a class action to ensure that the absent class members are being properly represented by the named plaintiffs and class counsel. *See* In re Integra Realty Resources, Inc., 262 F.3d 1089, 1112 (10th Cir. 2001).

> This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff. An essential ingredient of this requirement is that the class representative's attorneys be qualified to vigorously and adequately prosecute the interests of the class.

Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) (*cited with approval in* In re Integra Realty Resources, Inc., 262 F.3d at 1112).

The court notes that it had serious concerns about the adequacy of representation in this case as early as the class certification hearing when the

4

named plaintiffs failed to attend the hearing and failed to present any evidence with respect to the adequacy issue. The court nonetheless permitted plaintiffs to supplement the record with "what they consider[ed] to be appropriate and sufficient evidence to establish both components of the adequacy-of-representation prong." Beer, order at 4 (W.D. Okla. Dec. 3, 2008) (Doc. No. 57). While the court ultimately certified a class in this case, its misgivings about the adequacy of representation continued to grow as the litigation progressed, culminating in the court's reluctant decision that decertification is required as neither counsel nor the named plaintiffs are adequately protecting the interests of the absent class members.

This conclusion is based on a number of factors. First, by their actions, the named plaintiffs have demonstrated an ambivalent attitude toward the class. Their failure to attend the class certification hearing evidenced indifference, which "as well as antagonism can undermine the adequacy of representation." Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000), *cert. denied*, 532 U.S. 967 (2001). While they attended the judicial settlement conference and the show cause hearing, those appearances were pursuant to court order. In addition, plaintiffs appeared to place their own interests ahead of the class when they sought summary judgment solely on their own behalf and not on behalf of the class. The fact that the court has granted that motion for summary judgment calls into question whether plaintiffs maintain a sufficient interest in the class to ensure their vigorous representation. Furthermore, plaintiffs have shown little

inclination to protect the interests of the Kansas subclass. They declined the court's invitation to amend the complaint to include a representative plaintiff from Kansas[2] and failed to seek a liability determination on behalf of the Kansas subclass. Even when plaintiffs sought summary judgment for damages, the briefing with respect to the Kansas subclass was woefully inadequate. Plaintiffs withheld any major analysis of Kansas law until they filed their reply brief in support of the second motion for summary judgment,[3] and even then they misrepresented Kansas law by citing language in a dissenting opinion as the holding in the case.[4]

Moreover, to the extent plaintiffs seek to resurrect a claim for payment for natural gas liquids ("NGLs"),[5] they also resurrect the commonality and typicality issues subsumed in that claim. At the class certification stage, defendant argued plaintiffs were not adequate representatives because their claims were not common to or typical of the class. This argument was based in part on the fact that the gas

---

[2]*See* Beer, order at 4 (W.D. Okla. Dec. 3, 2008) (Doc. No. 57).

[3]At the show cause hearing, plaintiffs' counsel claimed the Kansas subclass was addressed at pages 4, 5, 6, 13, and 14 of plaintiffs' second motion for summary judgment. The references to Kansas law on these five pages, however, constitute only three paragraphs, two of which concern marketability and the duty to market, not whether Kansas would prohibit computing royalty payments based on sales between controlled and affiliated companies. Plaintiffs' Motion for Summary Judgment on Damages at 4, 5, 6, 13, 14 (Doc. No. 144). The one paragraph that does discuss non-arms-length sales makes a leap of logic with no analysis. Id. at 5-6.

[4]*See* Beer, order at 6 n.8 (Doc. No. 182).

[5]In the second motion for summary judgment, plaintiffs sought damages for the class based on calculations that included NGL proceeds. *See* Plaintiffs' Motion for Summary Judgment on Damages at 13-14 (Doc. No. 144); Exhibit 16 to Plaintiffs' Motion for Summary Judgment on Damages at 5-7.

6

produced from plaintiffs wells is "dry" gas, that is, gas with a lower British Thermal Unit content than gas produced from other class members' wells. "Wet" gas has more NGLs entrained in the gas stream; thus, members whose wells produce wet gas would arguably be entitled to greater compensation than plaintiffs. The court did not need to resolve this potential conflict,[6] however, because plaintiffs' counsel represented to the court and opposing counsel during the class certification hearing that the class was "not asking for a portion of the liquids". Transcript of Hearing on Class Certification at 101. Counsel made this statement in the course of objecting to defense questioning about individual accounting issues that would arise if plaintiffs sought proceeds from the sale of NGLs, an issue that went directly to defendant's commonality and typicality argument. Counsel for plaintiffs objected "to this line of questioning" on the ground that defendant was "asking hypotheticals on claims not asserted by plaintiffs." Id. In response to these statements, defendant's attorney abandoned this line of questioning. At the conclusion of the colloquy between the court and counsel for plaintiffs, both the court and counsel for defendant understood that plaintiffs had withdrawn their claim for compensation based on the NGLs extracted at defendant's gas processing plant.[7] Plaintiffs' attempt to revive this issue

---

[6]It is clear from defendant's opening statement during the class certification hearing that it considered this conflict a major impediment to certification. See Transcript of Hearing on Class Certification at 28-9 (Doc. No. 87).

[7]Defendant's counsel made this clear in his closing statement. Transcript of Hearing on Class Certification at 307-8 (Doc. No. 88). That the court had reached the identical conclusion was reflected in its ruling on the motion for class certification. Beer, order at 2 n.1 (Doc. No. 75). Although the court clearly stated that plaintiffs had withdrawn this claim, neither plaintiffs nor their

at this late date demonstrates either a fundamental misunderstanding of their counsel's prior representations and the court's findings based on those representations or an attempt to sandbag the court and opposing counsel.

This imbroglio, however, cannot be laid to rest solely at the feet of plaintiffs.[8] Counsel is also responsible for the confusion because they, at best, failed to correct the court's understanding and, at worst, misrepresented plaintiffs' position on this issue. Either way, counsel's performance with respect to the liquids issue is deficient. If, as the court found, counsel withdrew the liquids issue during the class certification hearing, they failed to protect the interests of class members who might have been entitled to a greater recovery than plaintiffs.[9] While their attempt to resurrect the issue might be beneficial to those class members, it is unfair to

---

attorney informed the court that – in their minds – the court was mistaken.

[8] Indeed, it is clear to the court that the major blame for the posture of this case lies with class counsel, and not with plaintiffs, as it was counsel who made the relevant litigation decisions and who prepared and filed papers with the court.

[9] Indeed, defendant argued this very point during closing argument at the class certification hearing:

> Couple that with the shifting nature of this claim, they apparently attempted to sacrifice, though some of the parties were potentially in the claim, filed under their class action in which they were seeking to recover percentages of the liquids or values for the liquids obtained at the -- recovered at the Tyrone plant by just saying, well, we're abandoning that claim. This is a class action. They have responsibilities to the class. There has been no demonstration that anybody is representing the class, that nobody is speaking for the interest of the class. The representatives are not here and that counsel can't become a member, a de facto member, to represent the class.

Transcript of Class Certification Hearing at 307-8.

defendant who thought the issue was settled.  At this stage of the proceedings, however, the court could not allow a liquids claim to go forward without reopening discovery and possibly reexamining the commonality and typicality factors.

In addition, the court has taken plaintiffs' counsel to task on a number of occasions for failing to follow the court rules and for plaintiffs' litigation strategy.[10] Likewise, the court has felt compelled on more than one occasion to note "certain fallacies advanced by plaintiffs in their briefs. Beer, order at 2 (W.D. Okla. Feb. 5, 2010) (Doc. No. 150).[11]  The court and the absent class members must be able to

---

[10]See, e.g., Beer, order at 1 (W.D. Okla. May 7, 2008) (Doc. No. 26) (failure to comply with LCvR 37.1); order at 1 (W.D. Okla. Jan. 9, 2009) (Doc. No. 63) (same); order at 2, 3 (Feb. 5, 2010) (Doc. No. 149) (filing serial Rule 30(b)(6) notices rather than a motion to compel); order at 3 (Feb. 5, 2010) (Doc. No. 150) (waiting nearly two years to contest a claim of privilege); order at 1 (W.D. Okla. Feb. 8, 2010) (Doc. No. 154) (filing two motions for summary judgment).

[11]In its order denying plaintiffs' third motion to compel, the court noted the following misstatements:

> First, plaintiffs' contention that defendant has a duty to supplement testimony given pursuant to a Rule 30(b)(6) notice is incorrect. . . . Second, plaintiffs' insistence that Howell v. Texaco Inc., 112 P.3d 1154 (Okla. 2004), imposes an independent duty on defendant to calculate royalty payments under various scenarios is unsupported by the case.  Third, plaintiffs' assertion that XTO had a duty to move for a protective order with respect to damages calculations performed by Bennie Kniffen at the request of counsel is off base. . . . Finally, the court is mystified by plaintiffs' assertion that they "have NOT dismissed claims related to liquids." . . . While plaintiffs are technically correct that they have not filed a motion dismissing claims in their Second Amended Petition relating to natural gas liquids, it is disingenuous to imply that issues relating to liquids remain part of their claim for an accounting and any subsequent damages.

Beer, order at 2-3 (Doc. No. 150) (footnotes omitted).  Similarly, in its order denying plaintiffs' second motion for summary judgment, the court noted:

> Plaintiffs' misrepresentation of the record borders on the vexatious.

rely on counsel. Based on counsel's performance, however, the court has lost its confidence in their ability to represent the class.

In sum, based on the record as a whole, the court regretfully concludes that decertification is warranted.[12] Given the posture of this case and the court's obligation to absent members, the court fails to see how it could continue this matter as a class action. To do so would be unfair not only to absent class members who could be bound by possible adverse res judicata effects of this case, but also to defendant because absent class members could attack the legitimacy of the class certification based on adequacy grounds. In addition, to the extent absent class members have a legitimate claim for recovery of liquids proceeds, they would be denied that recovery based on counsel's withdrawal of that claim during the class

---

> For example, plaintiffs' assertion that their first summary judgment motion sought a liability determination on behalf of the class is belied by their own statements. In addition, plaintiffs misrepresent the position taken by their attorney at the class certification hearing. Citing a portion of the class certification hearing transcript out of context, plaintiffs categorically state, "XTO asserts that Plaintiffs abandoned any claim for liquids, and that is simply untrue." An examination of the transcript, however, demonstrates that plaintiffs' counsel categorically disclaimed any interest in proceeds from the downstream sale of natural gas liquids ("NGLs").

Beer, order at 4 n.5 (Doc. No. 182) (citations omitted).

[12]The court is mindful of case law that holds a district court contemplating decertification of a class based on inadequacy of the representative plaintiff must normally allow a reasonable time to allow substitution or intervention by other class members. *See, e.g.*, Birmingham Steel Corp. v. Tennessee Valley Auth., 353 F.3d 1331, 1342 (11th Cir. 2003). In cases where class counsel is also deemed inadequate and issues have arisen as to commonality and typicality, however, immediate decertification is not an abuse of discretion. *See* Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002); Key, 782 F.2d at 7; Kaplan v. Pomerantz, 132 F.R.D. 504, 510-11 (N.D. Ill. 1990); Key v. Gillette Co., 104 F.R.D. 139, 140-41 (D. Mass. 1985), *aff'd* Key, 782 F.2d at 7.

certification hearing. Counsel's actions and failures to act cannot be undone. The court bemoans the waste of plaintiffs', defendant's, and judicial resources, but finds it has no choice but to decertify the class in this action. The claims of the class are therefore dismissed **without prejudice** to refiling either by individual members of the class or as a class action. See Elliott Indus. Ltd. P'ship v. BP America Prod. Co., 407 F.3d 1091, 1106 (10th Cir. 2005). Plaintiffs are directed to post a copy of this order on the class website, www.xtoclass.com., and to send the attached notice to all members of the class within **20 days** of the date of this order. To the extent plaintiffs have e-mail addresses for class members, the notice may be sent to those members via electronic mail rather than through the United States Postal Service. Plaintiffs shall file a notice certifying their compliance with the notice requirement within **30 days** of the date of this order.

As the court has granted summary judgment to the named plaintiffs, it will enter judgment in their favor. The parties are directed to confer and to submit an agreed judgment to the court in favor of the named plaintiffs with damages calculated through March 31, 2010. The agreed judgment shall be submitted to the court no later than **May 5, 2010**.

It is so ordered this 13th day of April, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge