IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

LADENE RAMSEY BEER, and )
KATHERINE K. BOECK, (collectively )
"Plaintiffs") on behalf of themselves and )
others similarly situated, )
)
                 Plaintiffs, )
)
vs. ) Case No. CIV-07-798-L
)
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
)
                 Defendant. )

# **O R D E R**

Plaintiffs Ladene Ramsey Beer and Katherine K. Boeck are royalty owners in two wells operated by defendant, XTO Energy, Inc. ("XTO"). Beer, as trustee, owns a royalty interest in the Fern Parkes #1 well, located in Texas County, Oklahoma. Boeck owns a royalty interest in the Leona Woods #1-17 well, also located in Texas County, Oklahoma. Both wells produce gas from the Chase formation in the Guymon-Hugoton field. On October 4, 2004, plaintiffs filed this class-action lawsuit in the District Court of Texas County, Oklahoma, seeking an accounting on behalf of themselves and members of the class. After the Petition was twice amended in state court, defendant removed the action to this court on July 19, 2007 pursuant to the Class Action Fairness Act. On March 20, 2009, the court certified this case as

a class action and appointed Beer and Boeck class representatives and Edward L. White and Martin S. High of the law firm Edward L. White, P.C. as class counsel. Beer v. XTO Energy, Inc., Case No. CIV-07-798-L, order at 12, 17 (W.D. Okla. Mar. 20, 2009) (Doc. No. 75). Two subclasses comprised the class. Both subclasses consisted of non-governmental royalty owners who "received payments based on production from an XTO-operated well for which the production is processed in Timberland's Tyrone natural gas processing plant." Id. The only difference between the subclasses was the physical location of the producing wells. The Oklahoma subclass consisted of members whose wells were located in Oklahoma; the Kansas subclass included members whose wells were located in Kansas.

Shortly after the court issued its order certifying this matter as a class action, plaintiffs' attorneys filed a motion for summary judgment solely on behalf of named plaintiffs Beer and Boeck in their individual capacities and not as class representatives. Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and Ramsey [sic][1] (Doc. No. 81). On February 5, 2010, the court issued an order granting plaintiffs' motion with respect to the claims of Beer and Boeck in their individual capacities. Beer, order at 10 (W.D. Okla. Feb. 5, 2010) (Doc. No. 148).

---

[1] The title of the motion is incorrect. The motion should have been titled "Plaintiffs' Combined Motion for Summary Judgment for Plaintiffs, Beer and *Boeck*". There is no individual plaintiff named "Ramsey".

The court specifically noted that it was expressing no opinion on the class claims as they were not before the court. Id.

On the day before motions for summary judgment were due under the scheduling order, plaintiffs' attorneys filed a motion for leave to file a second motion for summary judgment. As the motion indicated that defendant objected, the court called for an expedited response from defendant. Beer, order at 1 (W.D. Okla. Feb. 3, 2010) (Doc. No. 147). Before the court could issue this order and before defendant filed its response to the motion for leave, plaintiffs' counsel filed a second motion for summary judgment without leave. The second motion sought summary judgment solely on the issue of damages for the class. After receiving defendant's response, the court issued an order permitting the filing of plaintiffs' second motion for summary judgment. Beer, order at 2 (W.D. Okla. Feb. 8, 2010) (Doc. No. 154). The court noted:

> The filing of more than one motion for summary judgment in this case is not an efficient use of counsels' and the court's time; one motion for summary judgment on behalf of the class would have been a more expeditious use of judicial resources. Nonetheless, while the court does not countenance plaintiffs' litigation tactics, it finds a motion for summary judgment on behalf of the class might assist the court and the parties in narrowing the issues for trial.

Id. at 1-2. On March 16, 2010, the court issued an order denying plaintiffs' second motion for summary judgment. The court found the motion was premature as plaintiffs' counsel had not sought, nor had there been a ruling on the issue of liability

with respect to the class. Beer, order at 4 (W.D. Okla. Mar. 16, 2010) (Doc. No. 182).

In addition, the court issued an order for plaintiffs to show cause why they should not be removed as representatives for the class and why class counsel should not be removed as attorneys for the class. Id. at 5. The court noted its "obligation 'to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment' should the circumstances warrant." Id. at 4-5 (*quoting* In re Integra Realty Resources, Inc., 354 F.3d 1246, 1261 (10th Cir. 2004)). The court held the show cause hearing on April 2, 2010.

Based on the parties' arguments and representations at the hearing and the entire record in the case, the court issued an order decertifying the class in this action. Beer, order at 5-10 (W.D. Okla. Apr. 13, 2010) (Doc. No. 189). As the court's reasons for doing so are important for the class to understand the procedural posture of this case, the court reiterates those reasons in this order. In its prior order, the court noted that it had serious concerns about the adequacy of representation in this case as early as the class certification hearing when the named plaintiffs failed to attend the hearing and counsel failed to present any evidence with respect to the adequacy issue. The court nonetheless permitted plaintiffs to supplement the record with "what they consider[ed] to be appropriate and

sufficient evidence to establish both components of the adequacy-of-representation prong." Beer, order at 4 (W.D. Okla. Dec. 3, 2008) (Doc. No. 57). While the court ultimately certified a class in this case, its misgivings about the adequacy of representation continued to grow as the litigation progressed, culminating in the court's reluctant decision that decertification was required as neither counsel nor the named plaintiffs were adequately protecting the interests of the absent class members.

This conclusion was based on a number of factors. First, the court found that by their actions, the named plaintiffs demonstrated an ambivalent attitude toward the class. Their failure to attend the class certification hearing evidenced indifference, which "as well as antagonism can undermine the adequacy of representation." Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000), *cert. denied*, 532 U.S. 967 (2001). While they attended the judicial settlement conference and the show cause hearing, those appearances were pursuant to court order. In addition, the court noted that plaintiffs appeared to place their own interests ahead of the class when they sought summary judgment solely on their own behalf and not on behalf of the class. The fact that the court granted that motion for summary judgment called into question whether plaintiffs maintained a sufficient interest in the class to ensure their vigorous representation. Furthermore, the court found that plaintiffs and their counsel showed little inclination

to protect the interests of the Kansas subclass. They declined the court's invitation to amend the complaint to include a representative plaintiff from Kansas[2] and failed to seek a liability determination on behalf of the Kansas subclass. Even when plaintiffs' counsel sought summary judgment for damages, the briefing with respect to the Kansas subclass was woefully inadequate. Plaintiffs' attorneys withheld any major analysis of Kansas law until they filed their reply brief in support of the second motion for summary judgment,[3] and even then they misrepresented Kansas law by citing language in a dissenting opinion as the holding in the case.[4]

The court also noted that to the extent plaintiffs and their counsel sought to resurrect a claim for payment for natural gas liquids ("NGLs"),[5] they would also resurrect the commonality and typicality issues subsumed in that claim. At the class certification stage, defendant argued plaintiffs were not adequate representatives because their claims were not common to or typical of the class. This argument was

---

[2] See Beer, order at 4 (W.D. Okla. Dec. 3, 2008) (Doc. No. 57).

[3] At the show cause hearing, plaintiffs' counsel claimed the Kansas subclass was addressed at pages 4, 5, 6, 13, and 14 of plaintiffs' second motion for summary judgment. The references to Kansas law on these five pages, however, constitute only three paragraphs, two of which concern marketability and the duty to market, not whether Kansas would prohibit computing royalty payments based on sales between controlled and affiliated companies. Plaintiffs' Motion for Summary Judgment on Damages at 4, 5, 6, 13, 14 (Doc. No. 144). The one paragraph that does discuss non-arms-length sales makes a leap of logic with no analysis. Id. at 5-6.

[4] See Beer, order at 6 n.8 (Doc. No. 182).

[5] In the second motion for summary judgment, plaintiffs sought damages for the class based on calculations that included NGL proceeds. See Plaintiffs' Motion for Summary Judgment on Damages at 13-14 (Doc. No. 144); Exhibit 16 to Plaintiffs' Motion for Summary Judgment on Damages at 5-7.

based in part on the fact that the gas produced from plaintiffs wells is "dry" gas, that is, gas with a lower British Thermal Unit content than gas produced from other class members' wells. "Wet" gas has more NGLs entrained in the gas stream; thus, members whose wells produce wet gas would arguably be entitled to greater compensation than plaintiffs. The court did not need to resolve this potential conflict,[6] however, because plaintiffs' counsel represented to the court and opposing counsel during the class certification hearing that the class was "not asking for a portion of the liquids". Transcript of Hearing on Class Certification at 101. Counsel made this statement in the course of objecting to defense questioning about individual accounting issues that would arise if plaintiffs sought proceeds from the sale of NGLs, an issue that went directly to defendant's commonality and typicality argument. Counsel for plaintiffs objected "to this line of questioning" on the ground that defendant was "asking hypotheticals on claims not asserted by plaintiffs." Id. In response to these statements, defendant's attorney abandoned this line of questioning. At the conclusion of the colloquy between the court and counsel for plaintiffs, both the court and counsel for defendant understood that plaintiffs had withdrawn their claim for compensation based on the NGLs extracted at defendant's

---

[6] It is clear from defendant's opening statement during the class certification hearing that it considered this conflict a major impediment to certification. See Transcript of Hearing on Class Certification at 28-9 (Doc. No. 87).

gas processing plant.[7]  The court concluded that plaintiffs' attempt to revive this issue so close to trial demonstrated either a fundamental misunderstanding of their counsel's prior representations and the court's findings based on those representations or an attempt to sandbag the court and opposing counsel.

The court did not simply take issue with plaintiffs' representation, however. Rather, the court noted that the major blame for the posture of this case lay with class counsel as it was counsel who made the relevant litigation decisions and who prepared and filed papers with the court.  The court found counsel was also responsible for the confusion because they, at best, failed to correct the court's understanding and, at worst, misrepresented plaintiffs' position on the liquids issue. Either way, counsel's performance with respect to this issue was deficient.  If, as the court found, counsel withdrew the liquids issue during the class certification hearing, they failed to protect the interests of class members who might have been entitled to a greater recovery than plaintiffs.[8]  While their attempt to resurrect the issue might

---

[7]Defendant's counsel made this clear in his closing statement.  Transcript of Hearing on Class Certification at 307-8 (Doc. No. 88).  That the court had reached the identical conclusion was reflected in its ruling on the motion for class certification.  Beer, order at 2 n.1 (Doc. No. 75). Although the court clearly stated that plaintiffs had withdrawn this claim, neither plaintiffs nor their attorney informed the court that – in their minds – the court was mistaken.

[8]Indeed, defendant argued this very point during closing argument at the class certification hearing:

> Couple that with the shifting nature of this claim, they apparently attempted to sacrifice, though some of the parties were potentially in the claim, filed under their class action in which they were seeking to recover percentages of the liquids or values for the liquids obtained at the -- recovered at the Tyrone plant by just saying, well,
8

have been beneficial to those class members, it would have been unfair to defendant who thought the issue was settled. The court found that it could not allow a liquids claim to go forward without reopening discovery and possibly reexamining the commonality and typicality factors.

In addition, the court noted that it had taken plaintiffs' counsel to task on a number of occasions for failing to follow court rules and for plaintiffs' litigation strategy.[9] Likewise, the court felt compelled on more than one occasion to note "certain fallacies advanced by plaintiffs in their briefs." Beer, order at 2 (W.D. Okla. Feb. 5, 2010) (Doc. No. 150).[10] The court concluded that "[t]he court and the absent

> we're abandoning that claim. This is a class action. They have responsibilities to the class. There has been no demonstration that anybody is representing the class, that nobody is speaking for the interest of the class. The representatives are not here and that counsel can't become a member, a de facto member, to represent the class.

Transcript of Class Certification Hearing at 307-8.

[9]*See, e.g.*, Beer, order at 1 (W.D. Okla. May 7, 2008) (Doc. No. 26) (failure to comply with LCvR 37.1); order at 1 (W.D. Okla. Jan. 9, 2009) (Doc. No. 63) (same); order at 2, 3 (Feb. 5, 2010) (Doc. No. 149) (filing serial Rule 30(b)(6) notices rather than a motion to compel); order at 3 (Feb. 5, 2010) (Doc. No. 150) (waiting nearly two years to contest a claim of privilege); order at 1 (W.D. Okla. Feb. 8, 2010) (Doc. No. 154) (filing two motions for summary judgment).

[10]In its order denying plaintiffs' third motion to compel, the court noted the following misstatements:

> First, plaintiffs' contention that defendant has a duty to supplement testimony given pursuant to a Rule 30(b)(6) notice is incorrect. . . . Second, plaintiffs' insistence that Howell v. Texaco Inc., 112 P.3d 1154 (Okla. 2004), imposes an independent duty on defendant to calculate royalty payments under various scenarios is unsupported by the case. Third, plaintiffs' assertion that XTO had a duty to move for a protective order with respect to damages calculations performed by Bennie Kniffen at the request of counsel is off base.

class members must be able to rely on counsel. Based on [White's and High's] performance, however, the court has lost its confidence in their ability to represent the class." Beer, order at 9-10 (W.D. Okla. Apr. 13, 2010) (Doc. No. 189). The court therefore concluded that decertification of the class was warranted, noting that:

> Given the posture of this case and the court's obligation to absent members, the court fails to see how it could continue this matter as a class action. To do so would be unfair not only to absent class members who could be bound by possible adverse res judicata effects of this case, but also to defendant because absent class members could attack the legitimacy of the class certification based on adequacy grounds. In addition, to the extent absent class members have a legitimate claim for recovery of liquids proceeds, they would be denied that

---

. . . Finally, the court is mystified by plaintiffs' assertion that they "have NOT dismissed claims related to liquids." . . . While plaintiffs are technically correct that they have not filed a motion dismissing claims in their Second Amended Petition relating to natural gas liquids, it is disingenuous to imply that issues relating to liquids remain part of their claim for an accounting and any subsequent damages.

Beer, order at 2-3 (Doc. No. 150) (footnotes omitted). Similarly, in its order denying plaintiffs' second motion for summary judgment, the court noted:

> Plaintiffs' misrepresentation of the record borders on the vexatious. For example, plaintiffs' assertion that their first summary judgment motion sought a liability determination on behalf of the class is belied by their own statements. In addition, plaintiffs misrepresent the position taken by their attorney at the class certification hearing. Citing a portion of the class certification hearing transcript out of context, plaintiffs categorically state, "XTO asserts that Plaintiffs abandoned any claim for liquids, and that is simply untrue." An examination of the transcript, however, demonstrates that plaintiffs' counsel categorically disclaimed any interest in proceeds from the downstream sale of natural gas liquids ("NGLs").

Beer, order at 4 n.5 (Doc. No. 182) (citations omitted).

> recovery based on counsel's withdrawal of that claim during the class certification hearing. Counsel's actions and failures to act cannot be undone. The court bemoans the waste of plaintiffs', defendant's, and judicial resources, but finds it has no choice but to decertify the class in this action.

Id. at 10-11. The court therefore decertified the class and dismissed the claims of the class without prejudice to refiling either by individual members of the class or as a class action. Id. Beer and Boeck were removed as class representatives, and White and High were removed as counsel for the class. The court directed White and High to post a copy of the court's decertification order on the class website and to provide notice of the court's order to all members of the class within twenty days. Thirteen days later, Bill Fankhouser and Tim Goddard (collectively "Intervenors") filed a motion to intervene as representative plaintiffs in this action. They asked the court to stay distribution of notice to the class pending the court's resolution of their motion to intervene and their corresponding motion for reconsideration of the court's order dismissing the class claims. On the day the notice was to be posted, plaintiffs' attorneys filed an Emergency Motion to Stay Order Directing Distribution of Notice to Class (Doc. No. 196), in which they argued that

> it would be more efficient and less confusing to the class members to be provided one notice regarding the decertification and the outcome of the pending motions, particularly the motion to intervene, than to provide an incomplete first notice now, then potentially to provide other notice(s) later after rulings are issued on the pending motions. It is in the best interests of the class to receive

>all relevant information in the most cogent manner, and a
>single notice is less likely to confuse the class.

Id. at 2.[11]   The court granted plaintiffs' motion to stay; consequently, to date the official notice[12] of the court's decertification order has not been provided to the class.

This matter is now before the court on the Intervenors' Motion to Intervene and Motion for Relief from Order of Decertification and Dismissal. The court held an evidentiary hearing on the motion to intervene on July 7, 2010, at which Fankhouser and Goddard both testified. Based on the parties' briefs, the evidence adduced at that hearing, and the entire record in this case, the court makes the following rulings.

Intervenors seek leave to intervene in this action and to file claims on behalf of the class defined in their proposed Amended Complaint. Both Fankhouser and Goddard are members of the class the court certified on March 20, 2009. Beer, order at 17 (W.D. Okla. Mar. 20, 2009) (Doc. No. 75). Fankhouser is the owner of mineral interests that fall under the Oklahoma subclass and Goddard owns mineral interests that fall under the Kansas subclass. They seek to intervene as of right

---

[11]Despite the representations made in the motion to stay – including the assertion that it would cause confusion to provide an incomplete notice – White, without permission from the court, sent letters to a number of class members informing them that the court had decertified the class and encouraging them to execute representation agreements so that he could prosecute individual claims against defendant on their behalf. Exhibit 2 to Defendant's Motion for Order Directing Notice to Class and Barring Further Unauthorized Notice (Doc. No. 216). There is no indication that White provided these class members with a copy of the court's decertification order or the notice to the class prepared by the court.

[12]The court prepared the notice to be distributed to the class and attached it as an exhibit to the decertification order. Beer, order at 11 and attachment 1 (W.D. Okla. Apr. 13, 2010) (Doc. Nos. 189 and 189-1).

pursuant to Fed. R. Civ. P. 24(a)(2), or in the alternative, seek permissive intervention under Fed. R. Civ. P. 24(b). Rule 24(a) provides that:

> On timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added). There is no dispute that Intervenors meet three of the four requirements for intervention as of right. The court finds the motion to intervene, which was filed thirteen days after the court decertified the class, is timely. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" Utah Assoc. of Counties v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001) (*quoting* Sanguine, Ltd. v. United States Dep't of Interior, 736 F.2d 1416, 1418 (10th Cir. 1984)). In this case, there was no need to file a motion to intervene until the court found the class representatives were not adequate; Intervenors filed their motion within a short time thereafter. As to the second factor, Intervenors clearly have an interest relating to the property or transaction that is the subject of this action as they are members of the class previously certified by the court. Finally, there is no question that the Intervenors'

13

interests are not adequately represented by the existing parties, as the court's decertification order found that those parties and their counsel were not adequate representatives for the absent class members.

The only issue with respect to intervention as of right, therefore, is whether the Intervenors' interests "may as a practical matter be impaired or impeded". United States v. Albert Inv. Co., Inc., 585 F.3d 1386, 1391 (10th Cir. 2009) (internal quotation marks and citations omitted). "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." Utah Assoc. of Counties, 255 F.3d at 1253 (citations and internal quotation marks omitted). Defendant argues Intervenors can protect their interests by filing a separate action,[13] which they claim Intervenors are in effect doing in the guise of intervention since the Intervenors seek to present new claims. Intervenors counter that requiring them to file a separate action would be prejudicial for a number of reasons. First, Intervenors would not have access to the extensive discovery that has been produced to date by defendant as defendant designated all of it "confidential". Pursuant to the parties' stipulated protective order, confidential information can only be used for "the

---

[13]Defendant's argument that otherwise a "procedural conundrum" would occur were plaintiffs to appeal the decertification order is without merit as plaintiffs did not file a request to appeal within the time frame prescribed by Fed. R. Civ. P. 23(f). Any appeal of the court's decertification order would therefore have to await entry of final judgment, which would not be entered until after final disposition of this matter if the court were to grant the motion to intervene. See Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006).

14

preparation and trial of *this* action and any appeal herein". Stipulation and Agreed Protective Order at ¶ 5 (Doc. No. 1-41) (emphasis added). Second, filing a separate action could limit the class's right to recover damages for an extended period of time given the relevant statutes of limitations. See 12 O.S. § 93(A)(1); K.S.A § 60-511. As this action was filed in 2004, filing a new action in 2010 could conceivably reduce the class's recovery for royalty payments by at least six years. Finally, filing a new action could also run afoul of the first-to-file rule[14] and subject the claims of this class to additional delay. Based on all the circumstances in this case, the court finds that Intervenors have satisfied the impairment of interest requirement. They are thus entitled to intervene as of right in this action.[15]

Having determined that Intervenors may intervene in this action, the court must consider what conditions, if any, should be imposed on their intervention. *See* San Juan County v. United States, 503 F.3d 1163, 1189 (10th Cir. 2007) (*en banc*). The court finds that the "efficient conduct of the proceedings"[16] mandates that Intervenors be substituted as class plaintiffs and Intervenors' counsel be substituted

---

[14] *See* Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., Case No. 08-1330-JTM, mem. at 10 (D. Kan. Jan. 12, 2010).

[15] Had the court not found that intervention as of right was warranted, it would have exercised its discretion to permit intervention under Fed. R. Civ. P. 24(b). As members of the class, Intervenors clearly have claims in common with the main action, and the court finds that disallowing intervention would unduly delay the final adjudication of the class claims.

[16] Fed. R. Civ. P. 24 advisory committee's notes (1966 amendment).

as class counsel.[17] Based on the substitution of adequate representatives and counsel, the court vacates its dismissal of the class claims. To the extent Intervenors wish to amend the complaint, they must do so by motion within **fourteen days** of the date of this order. Otherwise this action will proceed under the allegations contained in the Second Amended Petition originally filed in state court. If new claims are added, the court will then determine whether the addition of such claims requires a new hearing on class certification.[18]

In sum, the Motion to Intervene (Doc. No. 191) is GRANTED. In light of this ruling, the Motion for Relief from Order of Decertification and Dismissal (Doc. No. 195) is also GRANTED. Edward L. White is directed to contact Conner L. Helms to arrange for the prompt delivery to him of all discovery materials provided by the defendant during the course of this litigation. **In addition, upon receipt of this order White shall transmit contact information for each member of the class to Helms. Upon receipt of the contact information, Helms is directed to provide a copy of this order to each member of the class.** To the extent the contact information contains e-mail addresses for class members, Helms may

---

[17]Based on the evidence presented at the July 7, 2010 hearing, the court finds Intervenors and counsel have established they will be adequate representatives of the class.

[18]As noted in the court's decertification order, the addition of a claim for liquids could give rise to questions regarding commonality and typicality. Beer, order at 6-7 (W.D. Okla. Apr. 13, 2010) (Doc. No. 189).

transmit a copy of this order to those members via electronic mail rather than through the United States Postal Service.

In light of the substitution of representative plaintiffs, the style of this case shall be modified to reflect Bill Fankhouser and Tim Goddard as the named plaintiffs. At the hearing on July 19, 2010, the parties should be prepared to discuss a scheduling order for the prompt adjudication of this matter.

It is so ordered this 13th day of July, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge