IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILL FANKHOUSER and TIM GODDARD, )
on behalf of themselves and all others )
similarly situated, )
)
               Plaintiffs, )
)
vs. )    Case No. CIV-07-798-L
)
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
)
               Defendant. )

## **MEMORANDUM OPINION**

This matter is before the court on Plaintiffs' Motion for Class Certification. The court has held two hearings on class certification. The first occurred on October 6 and 7, 2008 with prior counsel and representative plaintiffs.[1] The second hearing was held on September 27, 2010. In addition, the court held a hearing on the current plaintiffs' motion to intervene in this action on July 7, 2010. After reviewing the evidence presented at those hearings, the exhibits and arguments of record in this case, and the case law, the court makes the following findings of fact and conclusions of law.

---

[1] The history of this case and the reasons for substitution of counsel and representative plaintiffs are set forth in the court's order granting the current plaintiffs' motion to intervene. See Beer v. XTO Energy, Inc., Case No. CIV-07-798-L, order at 1-15 (W.D. Okla. July 13, 2010) (Doc. No. 225).

Plaintiffs Bill Fankhouser and Tim Goddard are royalty owners in wells operated by defendant XTO Energy, Inc. Fankhouser owns royalty interests in three gas wells located in Texas County, Oklahoma and one well located in Kearny County, Kansas. Goddard owns royalty interests in two wells located in Seward County, Kansas. All of plaintiffs' wells produce gas from the Chase formation in the Guymon-Hugoton field. On July 22, 2010, plaintiffs filed a Third Amended Complaint in this action asserting three claims for relief: breach of contract, breach of fiduciary duty, and unjust enrichment. In addition, plaintiffs seek the equitable remedy of an accounting for themselves and members of the class.

This matter is before the court on Plaintiffs' Motion for Class Certification. Plaintiffs seek to certify the following class:

> Non-governmental royalty owners who received payments based on production from a well that is/was operated by XTO for which the production is/was sold to Timberland Gathering and Processing Co., Inc., and processed at the Tyrone natural gas processing plant.
>
> *Kansas Subclass.* Royalty owners encompassed within the definition set forth above, who received royalties from at least one well located in the State of Kansas.
>
> *Oklahoma Subclass.* Royalty owners encompassed within the definition set forth above, who received royalties from at least one well located in the State of Oklahoma.
>
> *Excluded Claims.* All released claims under the settlement agreement entered in *Booth v. Cross Timbers*

*Oil Co.*, No. CJ-98-16 (Okla. Dist. Ct. Dewey County 2002).

Plaintiffs' Motion for Class Certification at 2 (Doc. No. 246) [hereinafter cited as "Plaintiffs' Motion].

Approximately 290 wells, which are located in Oklahoma and Kansas, are at issue in the proposed class. These wells, in turn, have more than 2000 royalty owners who qualify as members of the class under plaintiffs' proposed class definition. While the wells are all physically located in Western Oklahoma and Kansas, the royalty owners reside throughout Oklahoma and in 42 other states.

Defendant sells the gas produced from the individual wells to its wholly-owned subsidiary, Timberland Gathering and Processing Co., Inc. ("Timberland"), at or near the wellhead. The gas from the various wells is then commingled in Timberland's pipelines and transported to Timberland's Tyrone gas processing plant. In order for Timberland to move the raw gas through its gathering system, it must compress the raw gas using multiple off-lease compressors in various locations on its gathering system, including at the gas processing plant. Exhibit 16 to Plaintiffs' Motion at 114-15, 120-21, 125. Timberland uses some of the gas from the class wells as fuel to operate the compressors. Id. All of the raw gas from the class wells is gathered, commingled, and compressed into the same gathering system, where it travels to the Tyrone plant. Exhibit 15 to Plaintiffs' Motion at 28. At the plant, Timberland

processes the gas to remove impurities and to extract natural gas liquids ("NGLs").[2] All of the gas entering the Tyrone plant from whatever source is processed by Timberland in the same manner, without regard to the source well, even though some wells produce gas with higher entrained NGLs than other wells. Id. at 28-29. At the tailpipe of the Tyrone plant, Timberland sells the residue gas to Cross Timbers Energy Services, Inc. ("CTES"), another wholly-owned subsidiary of defendant. CTES – without transporting or performing any other processing – then sells the gas to an unaffiliated company, DCP Midstream, formerly known as Duke Energy Field Services, LP ("Duke"). Since 2005, Duke has paid CTES the Panhandle Eastern Index price for residue gas less $0.01 per thousand Btu. Exhibit 26 to Plaintiffs' Motion at ¶ 2.

Defendant sells gas to Timberland under two contracts. Under the first contract, executed on March 29, 1996, defendant is paid 80 percent of Timberland's weighted average residue price. Exhibit 20 to Plaintiffs' Motion at art. V, sec. 1. This contract governs the sale of gas from the Chase formation, from which the majority of the wells in the class produce. The second contract was executed on June 1, 1997. This contract, which governs sales of gas from zones below the Chase formation, specifies that defendant receives a price equal to 85 percent of

---

[2]NGLs are hydrocarbons that are separated from the natural gas stream in the form of liquids and generally consist of propane, ethane, butane, isobutane, lease condensate, natural gasoline, and liquified petroleum gases. *See* U.S. Energy Information Administration, Independent Statistics & Analysis, Glossary at http://www.eia.doe.gov/glossary/index.cfm?id=N. Typically, gas with a higher British Thermal Unit ("Btu") content contains more NGLs than lower Btu content gas.

Timberland's weighted average sales price. Exhibit 22 to Plaintiffs' Motion at art. IV, sec. 1(a). Timberland's weighted average sales price is the price Timberland receives from CTES, which, in turn, is the price CTES receives from Duke. *See* Exhibit 13 to Plaintiffs' Motion at 73-76. Thus, the price received by defendant, and upon which it bases its royalty calculations, is 80 or 85 percent of the price paid by Duke to CTES.

Whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical considerations. *See* Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988).

> The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a). Rule 23(a) imposes four prerequisites for class certification:
>
>> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287-88 (10th Cir. 1999) (citations omitted). If the court finds plaintiffs can meet these four threshold requirements, "it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988). When

ruling on a motion for class certification, the court accepts as true the allegations contained in the complaint. Id. at 1290 n.7. The court, however, "need not blindly rely on conclusory allegations which parrot Rule 23 requirements . . . ." Id. Rather, plaintiffs "must demonstrate, under a strict burden of proof, that all of the requirements of 23(a) are clearly met." Rex v. Owens ex rel. State of Oklahoma, 585 F.2d 432, 435 (10th Cir. 1978). Moreover, the court does not consider the merits of plaintiffs' case when ruling on the class certification motion. *See* Shook v. Board of County Comm'ns of the County of El Paso, 543 F.3d 597, 612 (10th Cir. 2008).

To meet their burden with respect to the numerosity element, plaintiffs must establish "that the class is so numerous as to make joinder impracticable." Peterson v. Oklahoma City Housing Auth., 545 F.2d 1270, 1273 (10th Cir. 1976). There is no set number at which numerosity is established, nor may numerosity be presumed. Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006). Plaintiffs allege the proposed class consists of approximately 290 individual wells and more than 2000 royalty owners who reside in many different states. Defendant does not dispute that plaintiffs can establish numerosity, and indeed, in its answer it concedes this point. Defendant's Answer and Affirmative Defenses to Plaintiffs' Third Amended Complaint at ¶ 19. The court therefore finds plaintiffs have established numerosity.

The second 23(a) prerequisite mandates the existence of "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added).

"[C]ommonality requires only a single issue common to the class"[3] and, at this stage of the analysis, it is not necessary that the issue predominate. Commonality is established if the members of the putative class "possess the same interest and suffer the same injury." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982). Moreover, "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983). Rather, common questions exist when the action arises from a common pattern or course of conduct against the class as whole. *See* Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

Plaintiffs assert they have satisfied the commonality requirement because "whether XTO either failed to pay or underpaid royalties in breach of XTO's various duties as a lessee and operator of the Class Wells is an issue that undergirds each and every one of the claims asserted by Plaintiffs on behalf of themselves and the Class Members." Plaintiffs' Motion at 18. Plaintiffs assert that defendant's identical treatment of plaintiffs and the class members gives rise to numerous common questions of law or fact. At this phase, however, the court need not determine that all of plaintiffs' alleged common questions of law or fact exist. The rule merely requires "a single issue common to the class,"[4] and the court finds plaintiffs have

---

[3] J.B. ex rel. Hart, 186 F.3d at 1288.

[4] J.B. ex rel. Hart, 186 F.3d at 1288.

presented one. Underlying each of plaintiffs' claims is the contention that defendant improperly paid royalties based on a sale between affiliated companies. Defendant's assertions that the class members' leases do not contain identical royalty provisions and the gas produced from plaintiffs' wells is lower in Btu content than gas from other class members' wells are not sufficient to eliminate commonality. Moreover, the court finds defendant's lease language argument disingenuous given that it pays royalties without regard to particular lease language. *All* putative plaintiffs are paid in the same manner regardless of whether the underlying lease is a proceeds, bifurcated, market value, or gross proceeds lease. At the hearings, defendant's own employees and expert witness conceded there is no difference in how royalties are paid to members of the class based on lease language, Btu content of the well, or geographic location, nor is there any difference in how the gas is gathered or processed. All members of the class are paid based on the same formula, and that formula has at its heart prices that plaintiffs contend are based on intra-company sales. As all members of the putative class "possess the same interest and [have] suffered] the same injury",[5] the court finds commonality exists.

In addition to members of the class having common claims, the claims presented by the named plaintiffs must be typical of the claims of the class as a whole. Plaintiffs' claims need not be identical to the class members for the claims

---

[5] Falcon, 457 U.S. at 156.

8

be typical;[6] rather, "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." Adamson, 855 F.2d at 675. "A named plaintiff's claim is 'typical' when it arises out of the same event, practice or course of conduct of the defendant, and is based on the same legal theory on which the putative class claims are predicated." Hill v. Kaiser-Francis Oil Co., 2010 WL 2474051, at *4 (W.D. Okla. 2010).

Plaintiffs assert their claims are typical of the class members' claims because XTO treats all royalty owners, wells, and gas produced from said wells in the same manner and uses the same methodology for calculating royalty payments. In response, defendant asserts the same arguments it presented with respect to commonality. Defendant also asserts that plaintiffs' interests conflict with the interests of other class members with respect to the NGLs claims because plaintiffs' wells produce from the Chase formation, which produces lower Btu-content gas than other class members' wells. Defendant argues it may be too expensive or uneconomical to process the low Btu content gas produced from Plaintiffs' wells in order to extract the NGLs. *See* Transcript of Hearing on Motion to Certify Class at 43-45 (Doc. No. 256). This argument, however, ignores a critical fact underlying plaintiffs' NGLs claims. Although the Btu content of gas varies from well to well, all of the raw natural gas produced from plaintiffs' and the class members' wells

---

[6]Anderson v. City of Albuquerque, 690 F.2d 796, 800 (10th Cir. 1982).

contains some appreciable amount of entrained NGLs. All of the raw gas from the wells is commingled in Timberland's gathering system, transported to the Tyrone plant, and processed as a unit in the same manner without regard to the source well, the particular producing formation, or variances in the Btu content. Thus, gas produced from plaintiffs' wells is gathered, commingled, and processed in the same manner as gas from higher Btu-content wells. Consequently, the fact that the gas from plaintiffs' wells has a lower Btu content or contains less entrained NGLs than other wells is merely a matter related to damages, not liability. Liability, however, is the true focus of any typicality analysis. The fact that damages may vary or that damages calculations must be conducted on an individual basis for each class members will not preclude a finding of typicality under Rule 23(a)(3). Plaintiffs' claims seek to establish whether defendant failed to pay royalties on the value of the NGLs and whether that failure was improper.

Defendant's assertions, however, do not defeat a finding of typicality under Rule 23(a)(3). Plaintiffs' and the class members' claims are based on the same legal theories and arise from the same pattern of conduct by defendant. The prosecution of plaintiffs' claims will establish all of the elements of the class members' claims and a decision in favor of plaintiffs will be probative of defendant's liability to the class members. The court thus finds plaintiffs' claims are typical of the class claims.

The final Rule 23(a) requirement is that the named plaintiffs and their counsel will adequately represent the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002), *cert. denied sub nom.* Brelsford v. Rutter & Wilbanks Corp., 539 U.S. 915 (2003) (*quoting* Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

> Significantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a "fundamental" one going to the specific issues in controversy. A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class. In such a situation, the named representatives cannot "vigorously prosecute the interests of the class through qualified counsel" because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members.

Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citations omitted).

Defendant attempts to manufacture conflicts between the class members based on differences in the lease language[7] and Btu content of the wells. As noted

---

[7]In its proposed findings of fact and conclusions of law, defendant argues plaintiffs are not adequate representatives because they "have not even presented proof that they have claims against XTO." Defendant XTO Energy Inc.'s Proposed Findings of Facts and Conclusions of Law at 15 (Doc. No. 259). Contrary to defendant's assertion, however, plaintiffs have presented evidence that they receive royalty payments from defendant, which would not occur without defendant having a contractual obligation to do so, and have alleged that defendant has violated

above, however, defendant's identical treatment of all royalty owners has made these differences irrelevant to the question currently at issue in this case. Moreover, with respect to the NGLs claim, there is no evidence that any class member has benefitted by defendant's alleged failure to calculate royalties based on the value of the NGLs. Plaintiffs' affidavits and testimony demonstrate that they understand the scope of the class and that no known conflicts exist between them and members of the class. In addition, plaintiffs have demonstrated their willingness and ability to assume the responsibilities of representing the class. They testified at the July 7, 2010 evidentiary hearing and were present and available to testify during the class certification hearing on September 27, 2010. There is no dispute that counsel for plaintiffs have successfully prosecuted numerous class actions and other complicated litigation in both state and federal court. Plaintiffs' attorneys are experienced trial attorneys whose firm is currently involved in the prosecution of at least five other class action lawsuits involving oil and gas issues. Quickly on the heals of the court's order decertifying the class, plaintiffs sought to intervene, which shows that they and their attorneys had been monitoring the case closely even before they sought to represent the class. Since being allowed to intervene, plaintiffs' prosecution of the case has been vigorous and their attorney's representation highly competent and professional. The court therefore finds plaintiffs have established the adequacy of representation prong.

---

its contractual and fiduciary duties in calculating those payments.

Having found that plaintiffs satisfy the requirements of Rule 23(a), the court must now determine whether this action qualifies for class certification under Fed. R. Civ. P. 23(b). Plaintiffs allege certification is proper under 23(b)(3), which permits maintenance of a class action if the court finds "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997). Given their identical treatment by defendant, the class members possess such cohesion. All members of the class base their claims on the same legal theory: that defendant's royalty payment formula has at its heart a price component that is improper under Oklahoma and Kansas law. The question of defendant's liability is central to all class members and is subject to generalized proof. The variations in Btu content of the wells and lease language are immaterial given defendant's identical treatment of all class members for royalty purposes. Those individual differences do not predominate over the common issue of whether defendant may base its royalty payments on an alleged intra-company sale and an alleged failure to account for NGLs.

In making the superiority determination, the court must examine:

>   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>   (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The first and second factors weigh in favor of certification. While certain putative class members filed a separate class action after the court decertified the original class in this case,[8] that action was dismissed after the court granted plaintiffs' motion to intervene in this action. Since then, no putative class member has indicated an interest in pursuing an individual action, and the parties have not notified the court of any other pending litigation concerning the issues presented by this case. Likewise, the last two factors weigh in favor of class certification. Concentrating the litigation in this forum appears desirable as the majority of the wells at issue and the Tyrone processing plant are located in the Western District of Oklahoma. Manageability does not appear to be a problem. The members of the class are finite and known, and even defendant's employees testified at the first class hearing that recalculating royalties due would be a rather simple mathematical

---

[8] Nevins v. XTO Energy Inc., Case No. CIV-10-592-L (W.D. Okla. filed June 4, 2010).

task that can be mechanized. Moreover, plaintiffs have established there is little incentive to bring individual suits, thus making a class action the superior vehicle in which to bring these claims.

In sum, the court concludes plaintiffs have met their burden of showing this case should proceed as a class action. Plaintiffs' Motion for Class Certification (Doc. No. 246) is therefore GRANTED. The following class is certified in this case:

> Non-governmental royalty owners who received payments based on production from a well that is/was operated by XTO Energy, Inc., for which the production is/was sold to Timberland Gathering and Processing Co., Inc., and processed at the Tyrone natural gas processing plant.
>
>> *Kansas Subclass.* Royalty owners encompassed within the definition set forth above, who received royalties from at least one well located in the State of Kansas.
>>
>> *Oklahoma Subclass.* Royalty owners encompassed within the definition as set forth above, who received royalties from at least one well located in the State of Oklahoma.
>
> *Excluded Claims.* All released claims under the settlement agreement entered in *Booth v. Cross Timbers Oil Co.*, No. CJ-98-16 (Okla. Dist. Ct. Dewey County 2002).

Plaintiffs' counsel of record are appointed as counsel for the class. As the court has determined that certification is appropriate under Fed. R. Civ. P. 23(b)(3), notice must be given to the class members. The court therefore directs the parties to confer and to submit to the court within **21 days** of the date of this order a notice to be served upon class members pursuant to Fed. R. Civ. P. 23(c)(2)(B). If the parties

15

are unable to agree on the text of the notice, they shall jointly file plaintiffs' proposed text interlineated with defendant's objections. Each party may also submit a separate brief in support of its position; the brief shall be filed simultaneously with the redlined version of plaintiffs' proposed text and may not exceed ten pages without leave of court.

It is so ordered this 16th day of December, 2010.

*Tim Leonard*
TIM LEONARD
United States District Judge