IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILL FANKHOUSER and TIM GODDARD, )
on behalf of themselves and all others )
similarly situated, )
)
                Plaintiffs, )
)
vs. )   Case No. CIV-07-798-L
)
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
)
                Defendant. )

# **O R D E R**

Plaintiffs Bill Fankhouser and Tim Goddard are royalty owners in wells operated by defendant XTO Energy, Inc. Fankhouser owns royalty interests in three gas wells located in Texas County, Oklahoma and one well located in Kearny County, Kansas. Goddard owns royalty interests in two wells located in Seward County, Kansas. The wells produce gas from the Chase formation in the Guymon-Hugoton field. Plaintiffs assert three claims for relief on behalf of themselves and others similarly situated: breach of contract, breach of fiduciary duty, and unjust enrichment. In addition, plaintiffs seek the equitable remedy of an accounting for themselves and members of the class. On December 16, 2010, the court certified this matter as a class action. The class consists of:

> Non-governmental royalty owners who received payments
> based on production from a well that is/was operated by
> XTO Energy, Inc., for which the production is/was sold to

>Timberland Gathering and Processing Co., Inc., and processed at the Tyrone natural gas processing plant.
>
>>*Kansas Subclass*. Royalty owners encompassed within the definition set forth above, who received royalties from at least one well located in the State of Kansas.
>>
>>*Oklahoma Subclass*. Royalty owners encompassed within the definition as set forth above, who received royalties from at least one well located in the State of Oklahoma.
>
>*Excluded Claims*. All released claims under the settlement agreement entered in *Booth v. Cross Timbers Oil Co.*, No. CJ-98-16 (Okla. Dist. Ct. Dewey County 2002).

<u>Fankhouser v. XTO Energy, Inc.</u>, Case No. CIV-07-798-L, mem. op. at 15 (W.D. Okla. Dec. 16, 2010) (Doc. No. 261).

This matter is before the court on Defendant's Motion for Partial Summary Judgment. Defendant seeks a ruling that, as a matter of law, certain members of the plaintiff class may not assert a claim for breach of the implied duty to market. It argues that the royalty language in certain leases negates the implied covenant to produce a marketable product. Defendant also seeks judgment that it has no duty to process gas to remove natural gas liquids ("NGLs"), and therefore has no obligation to pay royalties based on the value of the NGLs. Finally, defendant argues that, as a matter of law, plaintiffs cannot assert a claim for unjust enrichment because they have an adequate remedy at law.

Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). See also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Oklahoma and Kansas law recognizes in oil and gas leases an implied duty on the lessee's part to market production. "[T]he implied duty to market means a

duty to get the product to the place of sale in a marketable form." <u>Wood v. TXO Production Corp.</u>, 854 P.2d 880, 882 (Okla. 1993). The lessee bears the costs of putting the gas into a marketable condition, and such costs may not be charged to royalty owners. *See* <u>Mittelstaedt v. Santa Fe Minerals, Inc.</u>, 954 P.2d 1203, 1205 (Okla. 1998); <u>TXO Production Corp. v. Commissioners of Land Office</u>, 903 P.2d 259, 262-63 (Okla. 1995); <u>Sternberger v. Marathon Oil Co.</u>, 894 P.2d 788, 791 (1995); <u>Wood</u>, 854 P.2d at 882. Oklahoma courts have held that the implied duty to market "prohibits a lessee from deducting a proportionate share of transportation, compression, dehydration, and blending costs when such costs are associated with creating a marketable product." <u>Mittelstaedt</u>, 954 P.2d at 1205. The Court in <u>Wood</u> reasoned:

> We interpret the lessee's duty to market to include the cost of preparing the gas for market. The lessor, who generally owns the minerals, grants an oil and gas lease, retaining a smaller interest, in exchange for the risk-bearing working interest receiving the larger share of proceeds for developing the minerals and bearing the costs thereof. Part of the mineral owner's decision whether to lease or to become a working interest owner is based upon the costs involved. We consider also that working interest owners who share costs under an operating agreement have input into the cost-bearing decisions. The royalty owners have no such input after they have leased. In effect royalty owners would be sharing the burdens of working interest ownership without the attendant rights. If a lessee wants royalty owners to share in compression costs, that can be spelled-out in the oil and gas lease. Then, a royalty owner can make an informed economic decision whether to enter into the oil and gas lease or whether to participate as a working interest owner.

Wood, 854 P.2d at 882-83. If a lessee wants to burden a royalty owner with the costs associated with making the gas marketable, the lease must expressly and clearly provide that such costs are chargeable to the lessor. Mittelstaedt, 954 P.2d at 1207 (*citing* Wood, 854 P.2d at 883).

Citing a number of cases that do not construe royalty clauses,[1] defendant argues that the implied duty to market can be negated by lease language that requires royalties be paid on gas "at the well", "gas as such", "raw gas", "net proceeds" or "proceeds, less handling costs" of gas sold. This argument, however, ignores the fact that the cases in which the implied duty to market has been found had similar royalty clauses. For example, the royalty clause at issue in Wood required the lessee to pay "3/16 at the market price *at the well* for the gas sold." Wood, 854 P.2d at 880 (emphasis added). Likewise, Kansas cases that hold the duty to market requires providing a marketable product without cost to the lessor involve royalty clauses providing for payment based on the market price or value at the well or for payment on gas as such. *See* Sternberger, 894 P.2d at 792 (lessee

---

[1] Two of the cases cited by defendant are not even tangentially related to oil and gas leases. Marsh v. Coleman Co., 774 F. Supp. 608 (D. Kan. 1991) (employment discrimination); Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523 (Okla. 1985) (lease of a commercial building). Rogers v. Heston Oil Co., 735 P.2d 542 (Okla. 1984), concerned the implied duty to prevent drainage, but found no waiver of the covenant by a lessor's acceptance of delay rentals. Id. at 547. Duvanel v. Sinclair Refining Co., 227 P.2d 88 (Kan. 1951) and Fox v. Cities Serv. Oil Co., 200 P.2d 398 (Okla. 1948), concerned surface leases and the failure of the lessee to return the realty to its original condition. Central States Prod. Corp. v. Jordan, 86 P.2d 790 (Okla. 1939), which arguably did construe a royalty provision, merely stands for the unremarkable principle that "express covenants control over implied covenants." Id. at 791. The key, however, is that the contractual language must be express.

to pay "one-eighth (1/8), at the market price *at the well*, (but, as to gas sold by lessee, in no event more than one-eighth (1/8) of the proceeds received by lessee from such sales)") (emphasis added); Gilmore v. Superior Oil Co., 388 P.2d 602 (Kan. 1964) (lessee to pay "1/8 of the market value of such gas *at the mouth of the well* . . . . The lessee shall pay lessor as royalty 1/8 of the proceeds from the sale of gas *as such at the mouth of the well* where gas only is found") (emphasis added). The court therefore holds the implied duty to market is not negated by the lease language cited by defendant in this action.  To the extent the court in Naylor Farms, Inc. v. Anadarko OCG Co., Case No. CIV-08-668-R, ord. at 6 (W.D. Okla. Jul. 14, 2011) (Doc. No. 209), holds otherwise, this court respectfully disagrees.  Moreover, Naylor Farms is distinguishable from this case.  It is undisputed that the gas purchase contracts at issue in Naylor Farms were arms-length agreements. Id. at 1.  In contrast, the gas purchase contracts in this case are between affiliates and therefore subject to the rules pronounced in Howell v. Texaco Inc., 112 P.3d 1154 (Okla. 2004).[2]  *See* Beer v. XTO Energy, Inc., Case No. CIV-07-798-L, ord. at 5-7 (Doc. No. 148).

The court also finds that defendant has not established that it is entitled to judgment as a matter of law on the issue of whether extraction of NGLs is required

---

[2]It is noteworthy that one of the royalty provisions at issue in Howell provided for payment of "one-eighth (1/8) of the market value *at the mouth of the wells . . . of the raw gas*". Exhibit 7 to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment and Brief in Support (Doc. No. 324-7). In Howell, the Court reiterated that post-production costs are chargeable against the royalty payment only when the gas is marketable at the wellhead. Howell, 112 P.3d at 1159. The Court did not hold that the lease language in question negated the duty to market.

to make the gas marketable. Furthermore, even if defendant had established that the gas at issue is in marketable condition, it has not met its burden under Mittelstaedt. It is defendant's burden to prove that the cost of extracting NGLs was reasonable, that such extraction enhanced an already marketable product, and that royalty revenues increased in proportion to such costs. Mittelstaedt, 954 P.2d at 1209-10. Defendant's motion for summary judgment on the implied duty to market is therefore denied.

In addition, the court finds defendant has not established it is entitled to judgment as a matter of law on plaintiffs' unjust enrichment claim. Plaintiffs are permitted under the rules to plead alternative claims for relief as long as they do not obtain double recovery for the same harm. See Fed. R. Civ. P. 8(a)(3).

In sum, the court DENIES Defendant's Motion for Partial Summary Judgment (Doc. No. 298).

It is so ordered this 23rd day of February, 2012.

*Tim Leonard*
TIM LEONARD
United States District Judge