IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BILL FANKHOUSER and TIM GODDARD, )
on behalf of themselves and all others )
similarly situated, )
)
               Plaintiffs, )
)
vs. )   Case No. CIV-07-798-L
)
XTO ENERGY, INC. f/k/a CROSS )
TIMBERS OIL COMPANY, a Delaware )
Corporation ("XTO"), )
)
               Defendant. )

# **O R D E R**

This matter is before the court on five *Daubert*[1] motions presented by the parties. Defendant, XTO Energy Inc. ("XTO") seeks to exclude two witnesses to be presented by plaintiffs: Barbara Ley and Randy Kaplin. Plaintiffs ask the court to exclude three witnesses to be presented by XTO: W. Barry Mabry; Kris Terry; and David E. Pierce. The court held a hearing on the motions on April 5, 2012, at which Ms. Ley testified.[2] Based on the parties' briefs and the evidence and argument presented at the hearing, the court makes the following rulings.

---

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

[2] XTO originally requested a hearing with respect to Ms. Ley and Mr. Kaplin. Because Mr. Kaplin was not available on the date of the hearing, defendant agreed to withdraw its request for a hearing and to rely solely on argument of counsel.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule imposes two requirements before proffered testimony can be deemed admissible. First, the expert must be qualified to testify on the proposed subject matter. "To qualify as an expert, [the witness is] required to possess 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'" Lifewise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004) (citations omitted). Second, the testimony must concern scientific or specialized knowledge that will assist the jury in understanding or determining a fact in issue. See Daubert, 509 U.S. at 592. The proponent of the proffered testimony bears the burden of establishing the admissibility of the testimony and opinions. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir.)

(*en banc*), *cert. denied*, 130 S. Ct. 54 (2009). At this stage of the proceedings, however, the court does not address the weight or persuasiveness of the expert's proposed opinions; the court's focus is on the methodology employed to reach the conclusions rather than on the correctness of the conclusions themselves. Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2004), *cert. denied*, 546 U.S. 926 (2005).

With respect to the qualification prong, it is not sufficient that the witness has qualified as an expert in the past. This is because "when assessing expert testimony, 'the question before the trial court [i]s specific, not general.'" Nacchio, 555 F.3d at 1258 (*quoting* Kumho Tire Co. V. Carmichael, 526 U.S. 137, 156 (1999)). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995). *See also* Ralson v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001) ("merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue.").

If the court determines that the proffered expert is qualified, the court must then determine whether the expert's opinions are reliable. "In reviewing whether an expert's testimony is reliable, the trial court must assess the reasoning and methodology underlying the expert's opinion." United States v. Rodriguez-Felix, 450

F.3d 1117, 1123 (10th Cir.), *cert. denied*, 549 U.S. 968 (2006) (citations and quotations omitted).  In making this determination, the court may consider a number of factors including

> (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702 advisory committee note (2000).  In addition, the court may consider whether the expert's opinion was developed just for purposes of testifying, or whether such opinion is the result of research independent of the litigation.  Moreover, lack of reliability may be shown by an expert's "unjustifiably extrapolat[ing] from an accepted premise to an unfounded conclusion".  Id.

### XTO's Motion to Exclude Testimony of Barbara Ley

Barbara Ley is plaintiffs' damages expert.  In accordance with the court's Scheduling Order, as amended, Ms. Ley submitted an expert report on September 1, 2011.[3]  Ms. Ley issued supplemental reports on December 20, 2011 and March 26,

---

[3] Exhibit 1 to Defendant XTO Energy Inc.'s Motion for *Daubert* Hearing and to Exclude Expert Testimony of Barbara Ley (Doc. No. 341) [hereinafter cited as "Ley Motion"].

2012.[4]  XTO does not challenge Ms. Ley's qualifications to render an opinion in this case.  Rather, it argues her opinion on damages is not helpful to the jury because she calculated damages in the aggregate rather than on a well-by-well basis.  In addition, XTO challenges her calculations because she used extrapolated data where information was missing.  XTO also argues that Ms. Ley's calculations regarding natural gas liquids ("NGLs") do not take into account that the NGLs extracted from various wells are not uniform. For example, one well could have a higher level of entrained natural gasoline (which generates a higher price), while another well might be higher in propane, which is worth less.  Defendant XTO Energy Inc.'s Reply to Plaintiffs' Response to Motion for *Daubert* Hearing and to Exclude Expert Testimony of Barbara Ley at 7 n.2 (Doc. No. 386).

Ms. Ley's March 26, 2011 supplemental report answers XTO's aggregate damages objection as she has submitted a well-by-well analysis in this report.  XTO counters that the supplemental report is untimely and should be stricken.  Parties have an obligation to supplement expert reports if there are any additions or changes to the information given in those reports or in the experts' depositions. Fed. R. Civ. P. 26(e)(2).  Pursuant to Rule 26, supplemental disclosures should be made "at least 30 days before trial."  Fed. R. Civ. P. 26(a)(3)(B).  When Ms. Ley issued her

---

[4]Exhibit 3 to Ley Motion; Exhibit 1 to Defendant XTO Energy Inc.'s Motion to Strike Supplemental Expert Report of Barbara Ley (Doc. No. 432) [hereinafter cited as "Motion to Strike"].

March 26, 2012[5] supplemental report, trial of this matter was scheduled to begin April 9, 2012.[6] Thus, Ms. Ley's supplemental report is untimely under Rule 26(a). If a party fails to provide information as required by Rule 26(a) "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing whether to nonetheless allow such evidence, the court must consider

> "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."

Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir.), *cert. denied*, 537 U.S. 1066 (2002) (citation omitted).

The court finds XTO cannot be surprised by Ms. Ley's supplemental report as she testified at her deposition that she calculated damages for residue gas on a well-by-well basis but had not "prepared a separate schedule of damages by well." Exhibit 2 to Ley Motion at 7. She also explained during her deposition the methodology she would use to calculate damages associated with the NGLs back to the wellhead. Id. at 6, 8. Likewise, the court finds XTO is not prejudiced because the new report contains a lower estimate of damages for the class. As the court has

---

[5]Although the supplemental report is dated March 26, 2012, it was not transmitted to XTO until March 28, 2012. *See* Exhibit 1 to Motion to Strike at 1.

[6]On April 5, 2012, the court continued the trial of this matter to April 23, 2012. Even with the new trial date, Ms. Ley's supplemental report was untimely.

moved the trial date, XTO has sufficient time to review the supplemental report before trial.  In addition, XTO was able to question Ms. Ley about the supplemental report during the *Daubert* hearing; as she did not express any new opinions or change her methodology, the court fails to see why any further questioning should be necessary.  Moreover, as the court has continued the trial date, introduction of Ms. Ley's testimony will not disrupt the trial.  Finally, the court finds plaintiffs did not act in bad faith.  Ms. Ley was waiting for information to be provided by XTO.  When such information was not forthcoming, she relied on public sources to find what information she could.  Although a court generally should not excuse failure to comply with Rule 26(a) because the other party has not been forthcoming in discovery,[7] the fact that Ms. Ley had to gather such information from public sources on a well-by-well basis made her task much more time consuming.  By failing to provide the information in a timely fashion, XTO was in large part responsible for the delay.  Moreover, there is no indication that plaintiffs acted in bad faith or willfully tried to sandbag XTO.  The court therefore finds Ms. Ley may testify in accordance with her three expert reports.

With three exceptions, XTO's remaining criticisms of Ms. Ley's testimony go to the weight of her testimony rather than its admissibility.  The three exceptions were raised in XTO's motion in limine to exclude certain evidence regarding damages.  As those issues concern Ms. Ley's testimony, the court addresses them

---

[7]Jacobsen, 287 F.3d at 954.

here. The first issue concerns damages for disgorgement, which plaintiffs claim they can recover under their breach of fiduciary duty claim. XTO contends such damages are not appropriate under either Oklahoma or Kansas law. The court concurs. Under Oklahoma law, damages for breach of fiduciary duty "are limited by 23 O.S. 2001 § 61 . . . which is the codification of our common law." Commercial Fin. Servs., Inc. v. J.P. Morgan Sec., Inc., 152 P.3d 897, 900 (Okla. App. 2006), *cert. denied* (Jan. 16, 2007). Section 61 of Title 23 provides that the measure of damages "is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." 23 O.S. § 61. Detriment is defined as "loss or harm suffered in person or property." 23 O.S. § 4. The profits XTO allegedly made on the unpaid royalties do not constitute a detriment to plaintiffs. Plaintiffs are adequately compensated for the time-value of the money by the payment of prejudgment interest. Likewise, under Kansas law, "[t]he basic principle of damages is to make a party whole by putting him or her back in the same position as if the injury had not occurred, not to grant a windfall." Short v. Wise, 718 P.2d 604, 609 (Kan. 1986). As in Beck v. Northern Natural Gas Co., 170 F.3d 1018 (10th Cir. 1999), there is no evidence the profits XTO made as a result of allegedly underpaying royalties would have gone to the plaintiffs. The court finds plaintiffs may not seek disgorgement damages for their breach of fiduciary duty claim; therefore, plaintiffs may not present this evidence to the jury.

The second issue raised by XTO's motion in limine relates to Ms. Ley's proposal that damages should include "the gross value of liquids prior to a reduction for the 'TF&S fees.'" Exhibit 1 to Ley Motion at 5. TF&S stands for transportation, fractionation, and storage. At the hearing on April 5, 2012, the parties clarified that Timberland sells the NGLs as a mixed stream[8] at the tailpipe of the Tyrone plant in an arms-length sale to a third party. To this price, Ms. Ley added what she calculated were the TF&S fees incurred by that third party. The court finds this constitutes error. The value for the NGLs to be used in a work-back analysis is the arms-length price paid at the tailpipe. Plaintiffs are not entitled to any more.

The final issue concerns the interest rate Ms. Ley used for the Kansas subclass. She used a 10 percent simple interest rate pursuant to K.S.A. § 16-201. XTO counters that the appropriate interest rate is set by K.S.A. § 55-1614(h), which provides for a "rate equal to one and one-half percentage points above the interest rate charged on loans to depository institutions by the New York Federal Reserve Bank". The court agrees. Sections 55-1614 and 55-1615 govern payments from oil and gas production, while K.S.A. § 16-201 deals in general with the legal rate of interest "where no other rate of interest is agreed upon".

> It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence

---

[8] As the NGLs are sold as a mixed stream, XTO's argument that Ms. Ley's analysis does not take into account the fact that various wells have different entrained liquids appears to be without merit. Regardless, such an argument would go to the merits of her testimony, rather than its admissibility.

> over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case.

Garcia v. Anderson, 268 P.3d 1248, 1251 (Kan App. 2012) (*quoting* Chelsea Plaza Homes, Inc. v. Moore, 601 P.2d 1100, 1102 (Kan. 1979)). The court's conclusion that §§ 55-1614 and 55-1615 apply is consistent with the Kansas Supreme Court's pronouncement – albeit in *dicta* – that "the correct statutory basis for the allowance of interest [in an overriding royalty case] is KSA 55-1614, *et seq.*, rather than KSA 16-201." Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc., 1 P.3d 909, 921 (Kan. 2000).[9] Ms. Ley will be permitted to recalculate damages using the correct interest rate and deleting TF&S fees provided she provides those calculations to counsel for XTO no later than **April 16, 2012**. In addition, during the hearing the court granted Plaintiffs' Fourth Motion to Compel (Doc. No. 427) and directed XTO to immediately provide plaintiffs with information regarding the class wells, including whether there are any new wells on the Timberland system operated by XTO. To the extent this new

---

[9]The court has reviewed the "legislative history" submitted by plaintiffs and finds this evidence does not provide any indication of the legislature's reasoning behind the adoption of the Interest on Proceeds from Production Act. Rather, the documents provided by plaintiffs are merely statements by proponents of the legislation. Moreover, there is nothing in the statutes that limits the interest rate only to cases of suspension of royalty payments. Rather, the statute provides that the "payor shall owe its payee interest on *any payment*, other than excluded payments, at the interest rate provided herein". K.S.A. § 55-1615 (emphasis added). The court has also reviewed the Notice of Supplemental Kansas Decision on Proper Interest Rates (Doc. No. 424) provided by plaintiffs. The court respectfully disagrees with the reasoning of the Stevens County Court in Farrar v. Mobil Oil Co., Case No. 01-CV-12, ord. at 19-20 (Stevens County Dist. Ct. Mar. 15, 2012).

production changes Ms. Ley's calculations, she may include these revisions in the revised report due April 16, 2012.

## XTO's Motion to Exclude Testimony of Randy Kaplin

In his expert report, Mr. Kaplin presents eight opinions: (1) the raw gas produced from the class wells is not in marketable condition at the wellhead; (2) the contracts between XTO and Timberland are percentage of proceeds contracts and Timberland retains proceeds to compensate it for gathering, compression and treating; (3) the contracts between XTO and Timberland are not arms-length; (4) the XTO/Timberland contracts cannot be used to calculate royalty payments based on Howell;[10] (5) the first arms-length sale is between CTES and Duke; (6) the costs to make the gas marketable were charged to royalty owners; (7) the deduction for these costs were not disclosed to the royalty owners; and (8) XTO may not charge royalty owners for costs to put the gas into a marketable condition. Exhibit 1 to Defendant XTO Energy Inc.'s Motion for *Daubert* Hearing and to Exclude Expert Testimony of Randy Kaplin (Doc. No. 342). In its motion, XTO challenges opinions 1, 2, 3, 4, 7, and 8. XTO does not question Mr. Kaplin's qualifications to testify based on his experience; rather, it argues that Mr. Kaplin's opinion regarding marketability is not based on sufficient facts as he did not examine the composition of the gas in each of the class wells. In addition, XTO argues Mr. Kaplin's opinions regarding the XTO/Timberland gas contracts are either legal opinions or unreliable.

---

[10]Howell v. Texaco Inc., 112 P.3d 1154, 1160 (Okla. 2004).

XTO also seeks to exclude exhibits attached to Mr. Kaplin's report on the ground that they are generic and unrelated to the class wells. Plaintiffs counter that Mr. Kaplin has nearly 40 years experience in the oil and gas industry and that his testimony is based on documents that contain information regarding the physical qualities of the gas produced from each well.

The court finds that the majority of Mr. Kaplin's testimony has been rendered moot by the court's ruling on plaintiffs' motion for partial summary judgment. *See* Fankhouser v. XTO Energy Inc., Case No. CIV-07-798-L, ord at 8-11 (W.D. Okla. Mar. 8, 2012) (Doc. No. 405). The court will, however, allow Mr. Kaplin to provide limited testimony related to the class wells, how gathering systems work, and the Tyrone plant. XTO's assertion that Mr. Kaplin has a limited factual basis for his testimony goes more to the weight of that testimony rather than its admissibility. XTO will have the opportunity to cross-examine Mr. Kaplin during which it can question him about the flaws it perceives in his testimony.

### **Plaintiffs' Motion to Exclude Testimony of W. Barry Mabry**

In his expert report, Mr. Mabry presents calculations he performed using Timberland's financial information. He concluded that over the years Timberland has generated fluctuating levels of net income (including losses in some years) and that volumes of gas purchased and sold by Timberland have varied, as have the prices it paid and received. Mr. Mabry concludes that "[a] comparison of annual (Total Revenues less Transportation and Other income) minus (Total Expenses less

Gas purchased), per Mmbtu, has been less than 80% of Residue gas price per Mmbtu in some years, and more than 80% of Residue gas price per Mmbtu in other years." Exhibit 1 to Defendant XTO Energy Inc.'s Response to Plaintiffs' Motion to Exclude Mr. W. Barry Mabry as an Expert Witness at 2 (Doc. No. 352). He reaches the same conclusion with respect to the 85% contract; in some years the total revenues minus total expenses averages less than 85% of the residue gas price. Although it is not in his report, XTO contends Mr. Mabry should also be allowed to testify about problems he found in Ms. Ley's analysis.

Plaintiffs challenge Mr. Mabry's testimony on the ground that his analysis does not constitute a work-back analysis and therefore his testimony is not relevant nor would it be helpful to the trier of fact. With respect to the criticism of Ms. Ley's report, plaintiffs note that those opinions were not included in Mr. Mabry's report even though Ms. Ley's report is listed as one of the documents Mr. Mabry reviewed. Plaintiffs request that "[a]ssuming the Court finds these criticisms reliable and helpful to the trier of fact, Mabry should not be allowed to expand his opinions at trial and should be limited to his previous testimony." Reply to Defendant XTO Energy Inc.'s Response to Plaintiffs' Motion to Exclude Mr. W. Barry Mabry as an Expert Witness at 3 (Doc. No. 383).

The court finds plaintiffs' arguments go to the weight of Mr. Mabry's testimony rather than its admissibility. It will, however, permit Mr. Mabry to testify solely about accounting matters. He may not opine on the reasonableness of any of the costs

used in his analysis. Moreover, Mr. Mabry's testimony will be limited to that set forth in his expert report and his previous testimony. If, after reviewing Ms. Ley's supplemental expert report and the amended report the court has granted her leave to submit, Mr. Mabry has additional criticisms, they must be brought to the attention of plaintiffs' counsel no later than **3:00 p.m. on April 20, 2012**.

### Plaintiffs' Motion to Exclude Testimony of David E. Pierce

Professor Pierce is a law professor at Washburn University School of Law. He has submitted an expert report in which he opines about industry custom and usage in the Hugoton Field since the 1940s. XTO submits that "the clear purpose of Professor Pierce's testimony is to assist the fact-finder to understand the historical context and surrounding circumstances present when the leases at issue in this case were entered into, not to instruct the fact finder on legal principles." Defendant XTO Energy Inc.'s Response to Plaintiffs' Motion to Exclude David E. Pierce as an Expert Witness at 7 (Doc. No. 353) [hereinafter cited as "Pierce Response"]. Plaintiffs seek to exclude his testimony on the basis that he is offering legal opinions.

In his report, Professor Pierce offers seven conclusions: (1) the custom and usage in the Hugoton Field was "for producers to market gas, in its natural state, to a pipeline operator at or near the wellhead"; (2) it is industry custom "to consider gas to be a marketable product at or near the wellhead"; (3) the class leases were entered into when it was assumed that "producers would sell gas to a pipeline operator at or near the wellhead"; (4) most of the class leases expressly

acknowledge that sales will take place at the wellhead; (5) even those contracts that do not specify sales at the well "reflect the industry custom and usage that producers would sell gas to a pipeline operator at or near the wellhead"; (6) industry custom is "to pay a royalty that reflects the value of the extracted 'gas' and not the value of 'services' incurred to enhance the value of the extracted gas"; and (7) "the use of affiliated entities in the oil and gas industry is not an unusual practice, nor is it an improper practice." Exhibit 1 to Pierce Response at 2-3.

Given the court's summary judgment rulings, the court finds little relevance in Professor Pierce's proposed testimony. The court will nonetheless permit him to offer limited testimony on the history of the Hugoton Field, but cautions it will not permit him to offer legal opinions or to present any opinions that conflict with court's prior rulings.

**Plaintiffs' Motion to Exclude Testimony of Kris Terry**

Plaintiffs contend Ms. Terry is not qualified to testify as an expert in this case because she only worked in the gas industry for six years when it was a highly regulated industry. XTO counters that Ms. Terry has provided consulting services in the oil and gas industry since 1989. The court finds plaintiffs' arguments with respect to Ms. Terry's qualifications go to her credibility and can be brought out during cross-examination.

In addition, plaintiffs argue that Ms. Terry is not an accountant and therefore cannot offer opinions on accounting issues. XTO counters that Ms. Terry is not

offering either accounting or legal opinions. Ms. Terry does, however, offer the opinion that the costs Mr. Mabry used in his analysis were reasonable "[b]ased on my experience, and based on the particularities of this system". Exhibit 1 to Motion to Exclude Ms. Kris Terry as an Expert Witness at 13 (Doc. No. 343). Plaintiffs challenge her basis for this opinion.

The court finds that many of the opinions expressed by Ms. Terry in her reports have been superseded by the court's summary judgment rulings. For example, there is no reason for Ms. Terry to testify about the *Howell* case as the court has already determined that *Howell* applies. Likewise, there is no reason for her to testify about whether the gas is in marketable condition at the well given the court's summary judgment ruling. *See* Fankhouser v. XTO Energy Inc., Case No. CIV-07-798-L, ord. at 8-9 (W.D. Okla. Mar. 8, 2012) (Doc. No. 405). The court finds plaintiffs' arguments about Ms. Terry's testimony go mainly to the weight of her testimony rather than its admissibility. It therefore will allow her testimony provided she does not offer legal opinions or present any opinions that conflict with the court's prior rulings. Any flaws plaintiffs perceive in her testimony or credibility can be brought out on cross-examination.

## **Conclusion**

In sum, the following motions are DENIED: Plaintiffs' Motion to Exclude Defendant's Expert David E. Pierce (Doc. No. 339); Motion to Exclude Mr. W. Barry Mabry as an Expert Witness (Doc. No. 340); Defendant XTO Energy Inc.'s Motion

to Exclude Expert Testimony of Barbara Ley (Doc. No. 341); Defendant XTO Energy Inc.'s Motion to Exclude Expert Testimony of Randy Kaplin (Doc. No. 342); Motion to Exclude Ms. Kris Terry as an Expert Witness (Doc. No. 343); and Defendant XTO Energy Inc.'s Motion to Strike Supplemental Expert Report of Barbara A. Ley (Doc. No. 432). The expert witnesses will be permitted to testify in accordance with the court's rulings as noted above. In addition, Ms. Ley will be permitted to supplement her expert report to comply with the court's rulings on disgorgement, TF&S fees, and the Kansas interest rate as long as that report is furnished to counsel for XTO before **midnight on Monday, April 16, 2012**. Any criticisms of that report or Ms. Ley's March 26, 2012 report by Mr. Mabry must be transmitted to plaintiffs' counsel no later than **3:00 p.m. on Friday, April 20, 2012**.

    It is so ordered this 9th day of April, 2012.

*Tim Leonard*
TIM LEONARD
United States District Judge